**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Damian Hart, et al., ,                    )    No. CV 77-479-PHX-EHC (MS)
                                          )
          Plaintiff,                      )
                                          )
vs.                                       )    **ORDER**
                                          )
                                          )
Maricopa County Sheriff's Office, et al., )
                                          )
          Defendants.                     )
                                          )
_____)

The following motions are now pending before the Court:

1.  Defendants' "Pre-hearing Memorandum and Renewed Motion for Order to Terminate the Amended Judgment" (Doc. # 906);

2.  Plaintiff's "Order for Appointment of Experts" (Doc. # 930);

3.  Plaintiff's "Motion for Partial Judgment" (Doc. # 946);

4.  Defendants' "Motion to Compel Compliance with the Court's 1/21/04 Order and to Require Specification of All Alleged Current and Ongoing Constitutional Violations (if any) in the Maricopa County Jails" (Doc. # 950);

5.  Plaintiff's "Motion Pursuant to Fed. R. Civ. P. 37(a)(2)(B) to Compel Defendants to Allow Expert Inspection" (Doc. # 958);

6.  Plaintiff's "Motion to Exclude 'Supplemental Evidence' Submitted by Defendants" (Doc. # 969);

7.  Plaintiff's "Motion for Protective Order" (Doc. # 981-1);

8.  Plaintiff's "Motion to Quash Deposition Subpoenas" (Doc. # 981-2);

9.  Plaintiff's "Motion Pursuant to Fed. R. Civ. P. 37 (a)(2)(B) to Compel Defendants to Produce Relevant Documents" (Doc. # 989);

10. Defendants' "Motion to Entry of Scheduling Order" (Doc. # 998);

11. Plaintiff's "Motion to Exceed Page Limit on Reply Brief [to Motion to Compel at Doc. # 989]" (Doc. # 1003);

12. Plaintiff's "Motion for Order Requiring Defendants to Allow Class Counsel Access to Class Members" (Doc. # 1019);

13. Plaintiff's "Motion for Leave to File Declarations of Class Members and Former Class Members" (Doc. # 1026);

14. Defendants' "Motion for Leave to File Supplemental Response to Address Certain Matters First Raised in Plaintiff's Reply [re: Motion to Allow Counsel Access to Class Members]" (Doc. # 1027); and,

15. Plaintiff's "Motion for Order Requiring Defendants to Allow Class Counsel Access to Class Members" (Doc. # 1093).

The Court will address each motion in turn.

## I.  PROCEDURAL BACKGROUND

The Court will explain the procedural history of this case to the extent that reiteration is necessary to resolve the instant motions.

An Amended Judgment was entered in this case on January 10, 1995. [Doc. # 705].  The Amended Judgment "imposes extensive obligations on the county," including "ongoing compliance, monitoring and reporting," and enforcement mechanisms, relating to many facets of jail operations for pretrial detainees.[1] However, it is clear from the Amended Judgment that "[t]he provisions, conditions and procedures contained [therein] have been negotiated by the parties and do not represent a judicial determination of any constitutionally-mandated standard applicable to the jails." [Doc. # 75 at 2, ¶ 2].  On April 8, 1998, Defendants filed a Motion to Terminate the Amended Judgment pursuant to the Prison Litigation Reform Act's ("PLRA") termination provisions contained in 18 U.S.C. § 3626.  [Doc. # 755].  The Court denied Defendants' motion on September 10, 1998.  [Doc. # 774].

---

[1]  Hart v. Arpaio, 2001 U.S. App. LEXIS 1771 at * 2 (9th Cir. Jan. 23, 2001) (unpublished).

1  Defendants filed an appeal (Doc. # 777), and the Ninth Circuit Court of Appeals

2  reversed and remanded to the this Court for further consideration pursuant to

3  Gilmore v. California, 220 F.3d 987 (2000), a decision that issued only after the

4  Motion to Terminate was denied in District Court.

5  At an October 29, 2001 hearing (set to address Plaintiffs' motion to conduct

6  discovery), the Court ordered Defendants to submit a memorandum addressing

7  those aspects of the Maricopa County jail operations that potentially raise

8  constitutional concerns covered by the Amended Judgment, and with respect to

9  these areas, whether the County is operating the jails in a way that maintains the

10  rights of pretrial detainees. [Doc. # 831].

11  **A. Defendants' 2001 Memorandum**

12  Defendants submitted their Memorandum on November 28, 2001 ("2001

13  Memorandum"). [Doc. # 832]. The 2001 Memorandum addressed the following

14  areas: (1) population, housing and multiple bunking; (2) living conditions and medical

15  care (including ventilation, lighting, noise control, temperature, sanitation, food and

16  general living conditions); privileges (including access to reading materials, religious

17  services, mail, telephone, visitation and television); (3) and access to legal materials.

18  Plaintiffs responded to the 2001 Memorandum. [Doc. # 833 ("Response")].

19  In their Response at footnote 1, Plaintiffs stated that they "agree that the Defendants

20  have properly identified the subject areas of the Amended Judgment that implicate

21  constitutional concern. In fact, the Defendants have grouped many Amended

22  Judgment subjects in the four categories and have, therefore, covered almost

23  everything that has been dealt with in the Amended Judgment." [Id. at 2]. Plaintiffs

24  explicitly referenced in the Response the issue of adequate shelter, including

25  plumbing, washing facilities, hygiene and clean clothes and bedding, but note that

26  without discovery, they cannot confirm whether Defendants are complying with the

27  policy directives cited by Bill Williams in the Memorandum. [Id. at 5-6]. Plaintiffs did

28  not reference outdoor exercise specifically in their Response, however. Plaintiffs

1  conclude their Response by requesting an evidentiary hearing regarding

2  housing/overcrowding issues, and discovery as to the remaining issues.  In their

3  Reply, Defendants contended that an evidentiary hearing is not necessary, and that

4  the Court should not authorize any discovery. [Doc. # 834].

5       In its September 12, 2002 Order, the Court recognized that "Plaintiffs agree

6  that Defendants have properly identified the subject areas of the Amended

7  Judgment that implicate constitutional concern." [Doc. # 840].  The Court allowed

8  Plaintiffs to conduct limited discovery, including the depositions of Bill Williams, Trina

9  Lambert, and an employee at the Sheriff's Office who may have information similar

10  to that possessed by Trina Lambert. [Id. at 4]. The Court also required Plaintiffs to

11  submit, by November 1, 2002, a report indicating whether they seek further

12  discovery and their position regarding termination of the Amended Judgment. [Id.].

13       **B.  Plaintiffs' 2002 Report**

14       Plaintiffs filed their Report on November 1, 2002 ("2002 Report").  [Doc. #

15  852].  Plaintiffs specifically addressed overcrowding, psychological and medical

16  care, living conditions (padlocks on cells, physical violence toward inmates,

17  punishment without a hearing, access to legal materials, courts and counsel, and

18  telephone and visitation privileges).  Plaintiffs did not directly address plumbing

19  issues or outdoor recreation in their Report.  In the Report's conclusion, Plaintiffs

20  requested to review the grievances reviewed by Bill Williams, gain access to six

21  months of recorded phone calls, and access to the Madison Jail to inspect the cells

22  that are padlocked. [Id. at 16-17].  Plaintiffs reserved the right supplement the Report

23  once their review was completed.  [Id. at 16].

24       The 2002 Report's conclusion also contains, in detail, the issues for which

25  Plaintiffs believed a hearing was necessary:

26

27       1.   Population, housing, multiple bunking (overcrowding);

28

- 4 -

1

2

    2.   Medical care (staffing, denial of medication, and grievance review results);

3

    3.   Living conditions (inmate safety (padlocked cells and physical violence), and the special meal program and punishment for alleged rule violations);

4

5

    4.   Access to legal materials, court, and counsel (writing materials, attorney visitation, telephone system (recording of privileged calls, time restraints on calls, collect calls)); and,

6

    5.   Privileges (telephone (collect calls) and visitation (insufficient staff)).

7    [Id. at 17].[2] Plaintiffs averred that they are entitled to an evidentiary hearing on those

8    issues that they do not concede to be in compliance with constitutional minimum

9    standards, and that the burden of proving that there are no ongoing constitutional

10   violations is on Defendants under Gilmore, supra. [Id.].

11         Defendants responded to Plaintiffs' 2002 Report. [Doc. # 857]. Defendants

12   first argued that Plaintiffs should not be granted access to inmate grievances

13   because of confidentiality concerns, and because "[r]eview [of] these approximate[ly]

14   35,000 grievances is also not likely to provide relevant and useful information." [Id.

15   at 3]. Defendants averred that the grievances are not proof of mistreatment, and are

16   instead evidence that inmates are afforded due process. [Id.]. Defendants also

17   claimed that production of the grievances would be overly burdensome. [Id. at 4].

18   As to transcripts of recorded telephone calls, Defendants argued that principles of

19   comity should prevent Plaintiffs from pursuing claims collateral to those already

20   being litigated in Superior Court. [Id. at 4]. Defendants agreed to allow Plaintiffs

21   access to the Madison Street Jail to inspect padlocked cells.

22         Defendants then proceeded to address the five areas of concern contained

23   in Plaintiffs' Report, claiming that no evidentiary hearing is necessary as to any

24   issue. Defendants did not address, however, plumbing or outdoor exercise issues

25   in their response to the 2002 Report.

26

27

28

    [2] These categories would later become known as the "five issue areas."

1    Plaintiffs filed a Reply reiterating the issues for which a hearing is necessary.

2    [Doc. # 867].  However, although Plaintiffs refer generically to "living conditions," the

3    Reply does not state that plumbing issues or access to outdoor recreation were

4    among the specific issues to be addressed at any hearing.

5    On March 4, 2003, the Court set a hearing on the Motion to Terminate. [Doc.

6    # 872].  In that Order, the Court ordered the parties to be prepared to discuss at oral

7    argument what issues may require an evidentiary hearing. [Id. at 2].  The Court

8    conducted the hearing on April 14, 2003, and took both the Motion to Terminate, as

9    well as discovery issues, under advisement.  [Doc. # 876].[3]  The Court also stated

10   that it was considering appointment a special master. [Id.].

11   **C. The 2003 Proceedings Regarding Appointment of a Special Master**
     **   and Preparation for an Evidentiary Hearing**

12

13   Two months after the Court mentioned that it was considering appointment of

14   a special master, Plaintiffs filed a motion for appointment of special master.  [Doc.

15   # 878].[4]  In their response to the motion, Defendants outlined their informal efforts

16   to accommodate the appointment of a special master prior to the filing of Plaintiffs'

17   motion for appointment. [Doc. # 881].  Defendants attached the April 25, 2003 letter

18   from Plaintiffs' counsel, in which Plaintiffs' counsel states that the subjects Plaintiffs

19   wished to pursue at an evidentiary hearing were those raised in Plaintiffs' Reply to

20   the Joint Response of Defendants to Plaintiffs' Report (Doc. # 867). [Doc. # 881,

21   Exh. B].  Defendants attached another letter dated May 20, 2003, in which Plaintiffs

22   outline 5 issues for hearing: (1) jail population and housing conditions; (2) medical

23   services including psychiatric and psychological services; (3) padlocked cells and

24   the disciplinary process (procedure and punishment, including special meals); (4)

25   access to legal materials (including writing materials); access to counsel (including

26

27   [3]  No transcript for this hearing is in the Court's file.

28   [4]  The motion is not contained in the file.

- 6 -

1   visitation and telephone calls); and, (5) telephone and visitation privileges. [Id., Exh.

2   E].[5]  Plaintiffs filed a Reply, which did not dispute Defendants' conclusion. [Doc. #

3   882].

4          On September 2, 2003, the Court held a hearing regarding appointment of a

5   special master. [Doc. # 888].  The Court decided not to appoint a special master,

6   and instead indicated that he would hold a two-day evidentiary hearing. [Id. at 4].

7   Addressing the five issue areas, the District Judge stated that he was not "prepared

8   to say at the minute" "whether all of those might involve constitutional violations."

9   [Id.].  The Judge then opined that each side should submit a memorandum prior to

10  the hearing about these five issues and "what they  perceive the factual situation to

11  be with respect to those circumstances." [Id. at 5].

12         The Judge noted at the hearing that he was not going to "get into" reviewing

13  inmate grievances. [Id. at 6].  The Judge further stated that Plaintiffs should be able

14  to obtain information from Defendants regarding the number of prisoners, the

15  number of jail cells, and other information about jail population numbers including

16  whether inmates had access to day rooms and "whether there's some requirement

17  for times out of cells, exercise, things like that." [Id. at 5, 8].  The Judge refused to

18  get into a discussion about the exact details of what Defendants should present at

19  the evidentiary hearing, stating to defense counsel that "I don't want to have another

20  six months identifying what we're doing, Mr. Birnbaum.  You've been in this case

21  how long?" [Id. at 14].  However, the Court did specify, for example, that the

22  Defendants should be prepared to present what their policies and procedures are

23  pertaining to, for example, the provision of health care. [Id. at 15].  When counsel for

24  Plaintiffs raised the issue of being able to test what Defendants say at the hearing,

25  the Court stated that "[w]ell, we'll start out and see what they tell us, and then if

26

27         [5]   These five issue areas are almost identical to those contained in

28  Defendants' response to the motion for special master.

1   there's some problem about testing them, then we can do that." [Id. at 17].

2        On September 25, 2003, the Court formally granted Plaintiff's Motion for

3   Evidentiary Hearing (Doc. # 852). [Doc. # 889].  In his Order, the District Judge

4   ordered that "any notices, with respect to issues to be addressed at the Evidentiary

5   Hearing, be filed by [dates]." [Id.].   The Court then set the evidentiary hearing for

6   dates in November 2003.

7   **D.  The Pre-Hearing Memoranda**

8        As ordered, both Defendants and Plaintiffs filed pre-hearing memoranda.  In

9   their Memorandum ("Defendants' 2003 Pre-Hearing Memorandum"), Defendants

10  referred to outdoor exercise and plumbing issues, but only as they pertained to

11  overcrowding. [Doc. # 906 at 17].   In their Memorandum ("Plaintiffs 2003 Pre-

12  Hearing Memorandum"), filed 7 days after Defendants Memorandum was filed,

13  Plaintiffs outlined the topics for which they seek a hearing:

14      1.  Housing conditions
       a.   overcrowding

15         b.   inadequate supervision
       c.   inmate suicides

16         d.   prisoner-on-prisoner violence
       e.   lockdowns and restricted diets

17         f.   lack of basic sanitation
       g.   lack of physical exercise

18         h.   security overrides due to lack in staffing
       i.   incorrect classification of inmates

19         j.   prisoners sleeping on the bare floor in intake areas
       k.   padlocked cells

20

21      2.  Medical, Dental and Psychiatric Care
       a.   lack of staffing

22         b.   failure to receive prescribed medication
       c.   tooth extraction as a substitute for proper dental care

23         d.   inadequate medical screening at intake and inadequate notification
          of access to health care

24         e.   use of mechanical restraints and segregation for mentally ill
          patients, including segregating patients naked on bare cement
          floors

25         f.   inadequate identification and care of suicidal inmates
       g.   failure to keep adequate medical records

26         h.   prescribing psychiatric medicines for prolonged periods of time
          without follow-up

27         i.   failure to procure an inmate's prior mental health history
       j.   inadequate control of contagious diseases

28

3. Access to legal services
   a. failure to provide writing materials to indigent inmates
   b. failure to provide access to counsel because of inadequate staffing
   c. requiring inmates to call counsel collect
   d. monitoring and taping of confidential phone calls
   e. opening of legal mail
   f. failure to provide access to a telephone during business hours
   g. failure to provide contact visits with counsel

[Doc. # 920].

### E.  The November 2003 and January 2004 Evidentiary Hearings

The District Judge began hearings on the Motion to Terminate on November 25, 2003.  [Doc. # 924].[6]  At the hearing, the Judge addressed briefly the standard for terminating a consent decree pursuant to 18 U.S.C. § 3636(b), including which party bears the initial burden of proof under the statute. [Id. at 10-16].  The Court then proceeded to allow Defendants to present witness testimony regarding current conditions for pretrial detainees in the Maricopa County jail system.

Defendants first presented the testimony on Dr. Gale Steinhauser ("Steinhauser") regarding medical and mental health care in the jail system. [Id. at 21-88].  Steinhauser testified that the 8 physicians and 8 mid-level providers (physician's assistants and nurse practitioners) provide all necessary and adequate care for inmates. [Id. at 37].  As to psychiatric staff, Steinhauser stated that 7.3 psychiatrists are working on the "front line," but that two openings remained. [Id. at 38].  Steinhauser also testified that two psychologist positions are funded, but that at that time, one position remained to be filled.  [Id. at 39].  Steinhauser concluded that when these two positions are filled, staff and funding is adequate to provide medically necessary psychiatric care, prescribe medications, and to monitor and follow up on care. [Id. at 39].  Steinhauser further concluded that the staff of 60 RNs and 32 LPNs is an adequate number of staff.  [Id. at 44].  Lastly, Steinhauser

---

[6] The Court summarizes only those portions of witness' testimony that the Court deems relevant to the motions at hand.

1  averred that 40 medical assistants, 10 or 12 patient care assistants, and 20
2  counselors are currently funded. [Id. at 44].

3      The testimony of Bill Williams ("Williams"), Deputy Chief of Custody for the
4  Maricopa County Sheriff's Office, followed. [Id. at 89-172].  Williams testified as to
5  the current make-up of jail facilities within the system, including each facility's
6  capacity, the average length of stay of pretrial detainees, details as to how pretrial
7  detainees are booked into the Madison Street Jail ,and housing arrangements at the
8  Towers, Estrella and Durango jails.  Williams then discussed future plans to open
9  new facilities, including a new intake area at the new 4th Avenue Jail in July of 2004,
10  and the closing of the intake area of the Madison Street Jail.   Williams further
11  testified that in the second phase of realignment of pretrial detainees, detainees
12  would be moved from the Durango Jail to the newly constructed Lower Buckeye Jail.
13  As for plans to accommodate further, future increases in pretrial detainees, Williams
14  averred that Maricopa County plans to renovate portions of the Madison Street Jail,
15  and to construct an entirely new facility in place of the current Durango Jail.  Williams
16  testified that the current "Master Plan" would provide for enough facilities to last
17  through the year 2012.

18      In response to the Court's concern that any opinion regarding facilities to be
19  constructed in the future would be advisory, counsel for Defendants countered that
20  he was merely trying to demonstrate that even if there is a problem, the solution has
21  been "funded, constructed, and is coming on line." [Id. at 124].  Williams then
22  testified as to several other aspects of jail operations, including: padlocks and lock-
23  down procedures, whether the medical needs of inmates are being met, the
24  "nutriloaf" special meal program for addressing disciplinary matters, mail privileges,
25  laundry and inmate hygiene, accommodation of special dietary needs, access to
26  library services (including legal materials and supplies), grievance procedures, how
27  inmate violence is addressed, exercise, visitation, and telephone privileges
28  (including legal calls).

1     Upon completion of the testimony by Steinhauser and Williams, counsel for
2  Plaintiffs sought a 60-day continuance to cross-examine the witnesses due to,
3  among other obstacles, reviewing large amounts of discovery. [Id. at 173].  Counsel
4  for Defendants then requested that the Court require Plaintiffs to provide the Court
5  a pre-hearing summary prior to presenting their case. [Id. at 181].  Counsel for
6  Plaintiffs suggested to the Court that the assistance of experts was in order to help
7  prepare Plaintiffs' case. [Id.].  In response to Plaintiffs' request, the Court stated that
8  Plaintiffs could file a motion regarding experts, but that the motion should explain as
9  to what the experts would testify to. [Id. at 182].  Plaintiffs filed a motion for
10  appointment of experts on December 12, 2003. [Doc. # 930].

11     Cross-examination of Steinhauser and Williams occurred on January 22,
12  2004. [Doc. # 941].  Steinhauser testified that the jail was on probation at the time
13  the jail received accreditation by the National Commission on Correctional Health
14  Care ("NCCHC") in 2000, and that the report indicating that some of the essential
15  NCCHC standards were not being met has not been submitted to either the Court
16  or Plaintiffs.  [Id. at 11].  Steinhauser further stated that although the jail was "still
17  having trouble meeting [the] 14 day physical" requirement under the NCCHC
18  standards, initial screening still takes place to identify problems if they exist.  [Id. at
19  13-15].

20     In an effort to determine how many doctors are necessary to meet the mental
21  health care demands of pretrial detainees, Plaintiffs' counsel pressed Steinhauser
22  to arrive at a percentage of inmates with "major psychiatric disorders." Steinhauser,
23  however, was unable to provide counsel an exact figure.  [Id. at 16-34].  Plaintiffs'
24  counsel then explored with Steinhauser documented occurrences of violations of
25  state regulations regarding mental health care in individual cases. [Id. at 36-37].
26  Steinhauser acknowledged that incidents do occur, but that action plans are usually
27  put into place to make sure that appropriate personnel are educated so that a similar
28  incident does not reoccur.  [Id. at 37].  Steinhauser further testified that the timing of

1  medication and the staffing pattern to administer medication prior to court
2  appearances has been changed so that inmates no longer miss their medications
3  on those days.  [Id. at 39].  On redirect, Steinhauser confirmed that although the jail
4  has been placed on probation by the NCCHC in the past, as part of the accreditation
5  process, the NCCHC reviewed the corrective and remedial actions taken by the jail.
6  [Id. at 54].

7         Plaintiffs also addressed how a co-pay system for health care may impede
8  access. [Id. at 49].  In response, Steinhauser stated that she is not aware of any
9  detainee being denied health care because of indigency. [Id. at 50].   Plaintiffs
10 concluded by inquiring on to the use of restraint chairs. [Id. at 53-54].  Defendants
11 conducted limited redirect. [Id. at 54-56].

12        Plaintiffs first cross-examined Williams as to the policy of padlocking cells. [Id.
13 at 56-65].  Plaintiffs then addressed issues related to overcrowding at the Durango
14 Jail (id. at 65-74; 93-94), as well as how detainees are housed at intake (id. at 74-
15 79).  Plaintiffs briefly asked questions related to meals and roach infestations (id. at
16 79-81), and then turned to the issues of the average stay of pretrial detainees (id. at
17 81-85; 91-93) and the number of grievances filed, by category, between 2000 and
18 2002 (id. at 87-91).   Williams was cross-examined as to the special meal program
19 in relation to due process and weight loss (id. at 95-100) and the provision of legal
20 materials (pencil and writing material) (id. at 100-102).  Plaintiffs concluded their
21 cross-examination of Williams on the subject of restraint chairs. [Id. at 102-104].

22        **F.   Proceedings Addressing the Currently Pending Motions**

23        Most of the currently pending motions were filed after the January 22, 2004
24 hearing.   At a status hearing held on August 16, 2004, the Court questioned
25 Defendants as to the progress of opening the new facilities testified to by Williams.
26 [Doc. # 1014]. The Court further suggested to Plaintiffs that the Court was inclined
27 to terminate the Amended Judgment without prejudice to filing a new class action,
28 given that new jail facilities were beginning to come on line. [Id. at 9-10].  The Court

1  then discussed the matter of discovery and expert witnesses with Plaintiffs, and took

2  the pending motions under advisement.

3       On January 26, 2005, the assigned District Judge ordered that this case be

4  referred to the undersigned for determination of pending procedural, discovery and

5  other pretrial matters, as well as the preparation of a report and recommendation

6  regarding the ultimate disposition of the issues presented by Defendants' Motion to

7  Terminate. [Doc. # 1063].

8  **II.   Plaintiffs' "Motion for Partial Judgment" (Doc. # 946)**

9       **Defendants' "Motion to Compel Compliance With the Court's 1/21/04**
10      **Order and to Require Specification of All Alleged Current and Ongoing Constitutional Violations" (Doc. # 950)**

11      **Plaintiff's "Motion to Exclude Supplemental Evidence" (Doc. # 969)**

12      **A.  Plaintiff's Motion for Partial Judgment**

13           **1.   Plaintiffs' Contention that Recreation and Plumbing Issues**
14           **Were Not Addressed by Defendants at All at the Evidentiary Hearing**

15      In their Motion for Partial Judgment (Doc. # 946), Plaintiffs contend that

16 Defendants, in their case-in-chief, failed to address entirely that they comply with the

17 Constitution as to the following paragraphs of the Amended Judgment: ¶ 45 (prompt

18 removal of pretrial detainees from cells with inoperable toilets and sinks to a place

19 where such facilities are available); ¶ 47 (maintenance of a written plan for daily

20 housekeeping and regular maintenance of the jail, including toilets, shower and sinks

21 in good repair and cleaned properly); and, ¶¶ 84-86 (recreation time outside).

22 Plaintiffs, therefore, conclude that they are entitled to partial judgment on these

23 issues.

24      In their Response (Doc. # 952), Defendants aver that their presentation at the

25 November 2003 hearing addressed only those potential constitutional violations

26 identified by counsel for Plaintiffs' class prior to the hearing (population/housing,

27 medical services, padlocked cells, special meals, violence against inmates, access

28 to legal materials, access to counsel through visits and telephone calls, and general

1   telephone and visitation issues).  Therefore, Defendants argue, they did not address

2   each and every section of the Amended Judgment.  Defendants point out that April

3   and May 2003 letters authored by Plaintiffs counsel, which were later incorporated

4   into Defendants' proposed Order of Reference lodged August 1, 2003 (Doc. # 881),

5   framed the issues that Plaintiffs wanted addressed at the evidentiary hearing.  [Id.

6   at 4].[7]   Defendants note that although Plaintiffs "criticized some sections of that

7   proposed Order of Reference, the plaintiff-class had no objections to section 9

8   (which set forth the issues as formulated by counsel for the plaintiff-class)." [Id. at

9   5]. Defendants further note that the Court, at the September 2, 2003 hearing on the

10  issue of appointing a special master (Doc. # 885), "made express reference to this

11  list of issues. . . ." [Id.].  Defendants argue that Mr. Jarvi again referred to this

12  category of hearing subjects in a September 16, 2003 letter[8] requesting information

13  in preparation for the upcoming evidentiary hearing. [Id.].

14      Defendants argue that the requirements in the Amended Judgment far exceed

15  what the Constitution requires, and cannot be used by Plaintiffs to show the

16  existence or non-existence of any current or ongoing constitutional violations at the

17  Maricopa County jails. [Id.].  Defendants argue, as they did before the District Judge

18  at the November 2003 hearing,[9] that the Amended Judgment is stayed and that "the

19  proper focus of a motion to terminate pursuant to the PLRA is upon whether there

20  are current and ongoing constitutional violations and, if so, what, if any prospective

21  relief remains necessary to correct the identified violation and satisfies the three-fold

22  statutory requirement that such relief 'extends no further than necessary to correct

23

24      [7] The letters can be found at Doc. # 881, Exhibits B and E.

25

26      [8] Doc. # 902 at Exh. A.

27      [9] Doc. # 924 at 11.  The assigned district judge advised defense counsel not
    to push the argument as to whether the Amended Judgment was automatically
28  stayed by the PLRA.

1  the violation,' is 'narrowly drawn,' and is 'the least intrusive means to correct the

2  violation." [Id. at 5-6].  Defendants conclude by noting that if the Court finds that

3  these issues should be addressed, the Court should reopen proceedings so that

4  Defendants can demonstrate that no systemic problems exist that amount to a

5  constitutional violation. [Id. at 17].

6        In their Reply, Plaintiffs aver that they indeed informed Defendants of their

7  intent to raise the issue of plumbing and recreation in the November 21, 2003

8  Memorandum (Doc. # 920) filed in compliance with the Court's November 14, 2003

9  Order (Doc. # 905).  [Doc. # 957].  Plaintiffs further aver that Rule 52(c) does not

10 allow Defendants to reopen their case to address shortcomings in their case-in-chief.

11 [Id. at 4].

12
13
                    **2.    Plaintiffs' Argument that Defendants' Evidence Presented At
                    the Evidentiary Hearing Affirmatively Establishes Constitutional
                    Violations Exist**

14       Plaintiffs also argue in their Motion for Partial Judgment that Defendants'

15 evidence presented at the evidentiary hearing affirmatively establishes constitutional

16 violations as to the following provisions of the Amended Judgment:  ¶ 9.D. (no

17 housing of inmates in day rooms or other temporary facility); ¶ 9.F. (double bunking

18 only if two permanent bunks exist with access to a dayroom with no beds); ¶ 42

19 (sufficient bedding for reasonable sleeping comfort); ¶ 56 (proper screening at

20 reception);  ¶ 57 (access to health care services that conform to NCCHC

21 standards)[10]; and, ¶ 72.C. (provision of a blanket and bed or mattress for detainees

22 incarcerated in the intake area over 24 hours).  [Doc. # 946].  Plaintiffs argue that

23 under Gilmore, supra, Defendants carry the initial burden of proof in termination

24 proceedings, including proving that they comply with the U.S. Constitution in areas

25 covered by the Amended Judgment. [Id. at 4].

26

27
28
       [10]  Plaintiffs attach relevant portions of the NCCHC's "Standards for Health
Services in Jails" as an exhibit to their Motion for Partial Pretrial Judgment.

1    As to mental health care staffing (¶ 57 of the Amended Judgment), Plaintiffs

2  point out that Dr. Steinhauser testified at the evidentiary hearing that the jail was

3  short-staffed, with two positions waiting to be filled. [Id. at 7].[11]  Plaintiffs also aver

4  that Dr. Steinhauser admitted that initial health assessments (¶ 57 of the Amended

5  Judgment) are not conducted within 14 days, per the NCCHC "essential" standard

6  and contrary to the Ninth Circuit's holding in Gibson v. County of Washoe, Nev., 290

7  F.3d 1175, 1189-90 (9th Cir. 2002).  [Id. at 8].  As to sleeping conditions (¶¶ 9.D.,

8  9.F., 42, and 72.C of the Amended Judgment), Plaintiffs focus on Defendants'

9  testimony that pretrial detainees are required to sleep on pallets on the floor,

10  sometimes in day rooms.  [Id. at 9].  Plaintiffs point out that the Amended Judgment

11  requires that pretrial detainees may not be housed in a day room or other temporary

12  housing of any kind, and that detainees must be provided a mattress and bed or

13  bunk under the Ninth Circuit's holding in Thompson v. City of Los Angeles, 885 F.2d

14  1439, 1448 (9th Cir. 1989).  [Id.].

15    Defendants counter in their Response that Plaintiffs are incorrect that NCCHC

16  standards are equivalent to constitutional requirements for health care.  Instead,

17  Defendants contend, evidence presented at the hearing demonstrates that no

18  deliberate indifference to medical and mental health care needs has occurred as to

19  pretrial detainees.  As to the standard for deliberate indifference applicable to

20  Plaintiffs' class, Defendants aver that the "Court's focus must be on the facility's

21  medical program" and whether it "provides reasonable access to medical care–that

22  is, whether the jail has systemic deficiencies in staffing, facilities, or procedures that

23  make unnecessary suffering inevitable, or whether prison officials intentionally deny

24  a prisoner access to medical care or interfere with prescribed treatments." [Id. at 9-

25  10].

26

27    [11] Plaintiffs cite three cases for the premise that the U.S. Constitution requires

28  a minimum number of jail psychiatric staff.

1    Defendants claim that the decision in <u>Ruiz v. Johnson</u>, 154 F. Supp. 2d 975,

2   987-998 (S.D. Tex. 2001) is instructive as to what constitutes a current and ongoing

3   constitutional violation in the provision of health care under termination proceedings

4   under the PLRA. [<u>Id.</u> at 10].  Defendants provide excerpts from that case detailing

5   what, in the opinion of that district court, were "deeply disturb[ing]" but yet

6   "insufficient to show that the defendants were deliberately indifferent to prisoners'

7   physical and mental health needs, as required to prove a violation of the Eighth

8   Amendment."  [<u>Id.</u> (citation omitted)].  Defendants aver that if that court did not find

9   a constitutional violation, "the matters raised in Plaintiffs' Motion regarding

10   psychiatrist staffing and the provision of complete physicals to apparently healthy

11   inmates are trivial." [<u>Id.</u> at 11].  Defendants further aver that mental health staffing

12   levels exceed constitutional standards, and that Plaintiff's motion for partial judgment

13   ignores the fact that although vacancies occurred from time to time, Correctional

14   Health Services ("CHS") had "7.3 funded, front-line, licensed psychiatrists positions

15   (not including the Chief of Psychiatry).  [<u>Id.</u>].  As to intake screening, Defendants

16   reiterate the Dr. Steinhauser's testimony stating that just because medical screening

17   is not conducted within 14-days (as per policy), care is not necessarily inadequate

18   because initial screening separates the apparently healthy from those with problems

19   that require a more immediate, thorough screening. [<u>Id.</u> at 14].

20    Defendants further counter that the sleeping conditions at the jail also do not

21   rise to the level of unconstitutionality, as inmates still in a holding cell after 24 hours

22   (which constitutes .1% of all inmates in intake) are moved to a cell containing a bed.

23   [<u>Id.</u> at 15].  Defendants note that the use of dayrooms and stackable, portable beds

24   are evidence of Defendants' efforts to deal, in their discretion, with a high jail

25   population in a constitutional manner. [<u>Id.</u> at 15-16].  Defendants note that a district

26   court in Delaware has found that sleeping on mattresses on the floor for less than

27   two weeks did not rise to a constitutional violation as long as the detainees are

28

1  provided adequate food, shelter and clothing, and that an Illinois district court has

2  held the same way regarding mattresses on the floor.  [Id. at 16 (citations omitted)].

3        In their Reply, Plaintiffs reiterate their argument that Defendants' witness' own

4  testimony confirms that mental health care staffing is inadequate. [Id. at 6].  Plaintiffs

5  also reiterate that Defendants cannot rely on NCCHC accreditation to satisfy their

6  burden of proof. [Id. at 7].   Plaintiffs contend that intake screening must be

7  conducted by a qualified medical staff member within a reasonable time, and that Dr.

8  Steinhauser's admission that there is a longstanding failure to conduct screening

9  within the 14-days period establishes deliberate indifference. [Id. at 8-9].

10       Plaintiffs also argue in their Reply that Defendants admit that some pretrial

11  detainees are kept in the intake cells for over 24 hours, and that some prisoners are

12  required to sleep on the floor. [Id. at 9].  Further, Plaintiffs contend that Ninth Circuit

13  precedent has "condemned the practice of requiring prisoners to sleep on floor

14  mattresses." [Id. at 9-10].

15       **B.  Plaintiffs' Motion to Exclude Supplemental Evidence**

16       In their motion, Plaintiffs request that the Court strike the supplemental

17  evidence submitted by Defendants on May 20, 2004 (Doc. # 964). [Doc. # 969].

18       In their May 20, 2004 submission, Defendants state that they are submitting

19  additional evidence on those issues not addressed in their evidentiary presentation

20  at the November 23, 2003 hearing, and which are the subject of Plaintiffs' Motion for

21  Partial Judgment. [Doc. # 964 at 1-2].  Defendants concurrently submit the affidavits

22  of Dr. Steinhauser and Bill Williams. [Doc. # 965, 966].  Dr. Steinhauser states in her

23  affidavit that the problems with sinks, toilets and showers are transitory in nature,

24  and are corrected in a way that does not create any serious risk to the health and

25  safety of inmates. [Doc. # 965 at 2].  Dr. Steinhauser further affies that those inmates

26  who are not subject to special confinement or procedures receive one hour of

27  exercise three times per week. [Id. at 2-3].  Williams' affidavit and exhibits provide,

28

in detail, statistics regarding the repair of plumbing problems, the provision of outdoor exercise, and grievances filed thereon. [Doc. # 966].

Plaintiffs argue in their motion to strike that Defendants' submission is unauthorized and improper, and that the Court should grant Plaintiffs' motion for partial judgment. [Doc. # 969].  Plaintiffs aver that the proper way to submit the evidence would have been through a motion to reopen, but that in the end, "such a motion would have to be denied." [Id. at 4].  In the end, Plaintiffs argue, even if the Court were to consider such information, Defendants fail to carry their burden that they comply with the Constitution. [Id. at 6].

In their response to the motion to strike, Defendants reiterate the same argument that neither the subject of toilets/sinks/showers, nor the provision of outdoor exercise, were part of the "five questions" that were explicitly and impliedly agreed upon throughout 2003 and prior to the November 23, 2003 evidentiary hearing. [Doc. # 978].  Defendants state that the Court should deny the motion to strike, and if necessary, allow Dr. Steinhauser and Williams to present testimony, as well as cross-examination. [Id. at n.5].

Plaintiffs counter in their reply that Defendants fail in their response to explain why they never sought to reopen the evidentiary hearing, and why it is proper to reopen a case after a Rule 52(c) motion has been filed. [Doc. # 982].  Plaintiffs reiterate that their November 21, 2003 Memorandum (Doc. # 920) specifically alleged that plumbing at the jail was broken and malfunctioning, and that detainees were not receiving necessary physical exercise. [Doc. # 982 at 3].  Plaintiffs aver that if Defendants were somehow surprised by the this allegation, and needed more time to prepare so that the issues could be presented at the evidentiary hearing, Defendants should have moved for a continuance. [Id.].  Plaintiffs further state that as early as May 2003, Plaintiff's counsel's letter informed Defendants that housing conditions would be the subject of upcoming hearings. [Id. at 4].  Plaintiffs aver that in addition to the May 2003 letter, Plaintiffs' counsel's September 16, 2003 letter

1   requested specific information from Defendants regarding outdoor exercise. [Id.].

2   Plaintiffs also refer the Court to Defendants' pre-hearing memorandum filed

3   November 14, 2003, in which Defendants describe the recreational facilities that will

4   be available once the new jails come on line. [Id. at 5].

5           **C.  Defendants' Motion to Compel Compliance**

6           On January 11, 2004, the Court issued an Order that took under advisement

7   the issue of the appointment of experts for Plaintiffs. [Doc. # 938].  In that same

8   Order, the Court ordered Plaintiffs to "file an outline of the specific concerns Plaintiffs

9   claim are at issue regarding the conditions in, and conduct at, the jails in question,

10  and how any condition or conduct rises to a constitutional violation." [Id. at 2].  The

11  Court appears to have requested the outline in order to, at least in part, determine

12  whether an expert should be appointed, and the extent to which the expert would

13  conduct his or her investigation.  The Court's Order issued after the evidentiary

14  hearing in November 2003, but before Plaintiffs cross-examined Defendants'

15  witnesses.  It is this outline that Defendants challenge in their motion to compel

16  compliance.

17          On February 12, 2004, Plaintiffs filed the court-ordered outline, with the caveat

18  that the outline may be incomplete because "defendants have repeatedly failed to

19  provide the periodic reports under the Amended Judgment, and have refused

20  Plaintiffs' requests for information that could lead to discovery of constitutional

21  violations." [Doc. # 944].  Plaintiffs aver in their outline that Defendants' "fall short

22  of constitutional requirements in numerous respects." [Id.].  As in their Motion for

23  Partial Pretrial Judgment, Plaintiffs contend that Defendants fail in many ways to

24  meet the mental and other health care needs of pretrial detainees, including:

25  adequate health care staffing levels; adequately or timely screen incoming prisoners

26  for communicable disease or other health care needs and to provide an adequate

27  system for prisoners to make their health care needs known; provide prescribed

28  medication and treatments and supervision of inmates on medication;  provide

1  special diets; transfer to other medical facilities for specialized care; provide
2  adequate food (that is, feeding the nutriloaf to inmates for disciplinary violations);
3  adequate dental care; track and provide proper care to inmates at risk of self-harm
4  or suicide; place mentally ill patients in proper housing; certain use of restraint chairs
5  and four-point restraints. [Id. at 4-8].

6      As to "environmental health and safety," Plaintiffs also outline several
7  constitutional violations including: keeping detainees in holding cells for more than
8  24 hours without a bed, forcing detainees to sleep on the floor; and forcing detainees
9  to sleep on plastic pallets in dayrooms for extended periods of time. [Id. at 8].
10  Plaintiffs aver that these problems, in combination with overcrowding and poor
11  sanitation, pose "an unacceptable risk of injury or illness."  [Id.].

12      Plaintiffs further state in their outline that toilets, sinks, showers and other
13  plumbing are often non-functional, and that the remaining, operational units are not
14  enough to service the large number of detainees. [Id. at 9].  Plaintiffs also contend
15  that facilities are infested with vermin, and that overcrowding results in an
16  unacceptable risk of death by fire (including as a result of padlocking cells).  Plaintiffs
17  state that sanitation is entirely inadequate, "with garbage littering the tiers,
18  dayrooms, and other areas, creating a hazard to prisoner health and safety," and
19  "showers and toilets encrusted with scum" and "blocked drains creating pools of
20  standing water." [Id.].   Plaintiffs further aver that ventilation and air flow is
21  inadequate, which creates exposure to noxious fumes due to poor sanitation. [Id. at
22  10].  Plaintiffs state that food is often spoiled or improperly prepared, which places
23  inmates at risk of illness.  [Id. at 10].  Lastly, Plaintiffs aver that "prisoners are denied
24  adequate physical exercise," including in some instances complete deprivation of
25  outdoor recreation during the duration of pretrial detention. [Id.].

26      Over two months later, on April 21, 2004, Defendants filed their Motion to
27  Compel Compliance with the Court's January 21, 2004 Order. [Doc. # 950]. In their
28  motion, Defendants request that the Court strike the February 11, 2004 outline.

1    Defendants further request that the Court require Plaintiffs to provide a "specification

2    that is meaningful, detailed and factual for each alleged current and ongoing

3    constitutional violation at the Maricopa County Jails." [Id. at 2].   As part of that

4    specificity, Defendants request that: (1) each assertion of a constitutional violation

5    set forth with particularity the evidentiary basis for such a claim; (2) all discovery in

6    connection with the alleged constitutional violation be identified with particularity; (3)

7    Plaintiffs demonstrate why discovery is actually necessary; (4) produce the expert

8    report to Defendants; and, (5) allow the expert to be deposed. [Id.].   Defendants'

9    requests are based on their interpretation of the Court's January 11, 2004 Order as

10   requiring Plaintiffs to provide with specificity each alleged ongoing constitutional

11   violation accompanied by an explanation as to what facts support a claim that the

12   alleged violation is unconstitutional and systemic. [Id.].

13        As a result of Plaintiffs' failings, Defendants aver that the renewed motion filed

14   over two years ago remains pending, the November 2003 evidentiary hearing

15   remains unfinished, and, "neither the Court nor the Defendants have meaningful

16   information as to what specific conditions, policies or procedures are presently being

17   claimed by the plaintiff-class to constitute systemic, current and ongoing

18   constitutional violations, much less what evidence, if any, the plaintiff-class might

19   present regarding such alleged violations when the November 2003 hearing on the

20   Renewed Motion to Terminate again resumes." [Id. at 3].   Defendants conclude that

21   Plaintiff's outline is merely an attempt to have experts appointed so that they may

22   conduct a "fishing expedition." [Id. at 4].   Defendants take issue with Plaintiffs' caveat

23   that discovery has not been provided, and therefore Plaintiffs may not be able to

24   provide a full account of all ongoing and current constitutional violations.   Defendants

25   counter that they have provided discovery.   Defendants further aver that the

26   shortcomings in the February 11, 2004 outline demonstrate that Plaintiffs "know of

27   no systemic, current and ongoing constitutional violations at the Jails," and therefore

28   the Motion to Terminate should be granted and the case dismissed.   [Id. at 5].

1    In their Response to the motion to compel compliance, Plaintiffs first note that

2 the Court did not authorize what is essentially a response to the February 11, 2004

3 outline, and that Defendants must have sought leave of Court to file such response.

4 [Doc. # 967].  Plaintiffs aver that Defendants' motion is meritless, as Plaintiffs cannot

5 provide more specific facts without discovery, and when they request discovery,

6 Defendants contend that Plaintiffs are not entitled to specific discovery because the

7 case involves systemic problems. [Id. at 7].  Plaintiffs aver that any issue regarding

8 discovery is irrelevant to the February 11, 2004 outline, but that at any rate, Plaintiffs

9 should be entitled to discovery because they must prepare for an evidentiary

10 hearing. [Id. at 10].  Plaintiffs note that other district courts have allowed such pre-

11 hearing discovery. [Id. at 10-11].  Defendants filed a Reply, in which they reiterate

12 their arguments that Plaintiffs should be required to state with more specificity the

13 claims that they seek to pursue, and that Plaintiffs do not require more discovery to

14 do so.  [Doc. # 976].

15    **D.  Analysis**

16        **1.   Plaintiffs' Motion for Pretrial Judgment**

17    "On a [Rule 52(c)] motion, the trial judge weighs the evidence, resolves

18 conflicts and determines where the preponderance lies.  The motion may be granted

19 even if the plaintiff has made out a *prima facie* case, provided the court is convinced

20 that the evidence preponderates against the Plaintiff."  Johnson v. United States

21 Postal Serv. and Nat'l Rural Letter Carriers Ass'n., 756 F.2d 1461, 1464 (9th Cir.

22 1985) (citations omitted).  Put another way, "[a] judgment of partial findings may be

23 invoked when:  (1) the party pursuing the claim has not demonstrated the elements

24 of the claim either in fact or in law; or (2) the evidence of the party pursuing the claim

25 has established one of the opposing parties' defenses as a matter of fact or law."

26 MOORE'S FEDERAL PRACTICE ¶ 52.50 (3d ed 2003).  Under Rule 52(c), the Court

27 "may decline to render any judgment until the close of all evidence."  Fed. R. Civ. P.

28 52(c).  The Court, therefore, has discretion under Rule 52(c) to deny Plaintiffs'

1 Motion for Partial Pretrial Judgment pending the presentation of Plaintiffs' evidence

2 regarding those provisions of the Amended Judgment that Plaintiffs contend rise to

3 the level of constitutional violations.

4 As to the law applicable to Plaintiffs' claims, the Eighth Amendment to the U.S.

5 Constitution imposes a duty on Defendants to "provide human conditions

6 confinement," including providing adequate food, clothing, shelter and medical care.

7 . . " Farmer v. Brennan, 511 U.S. 825, 832 (1991).  Eighth Amendment claims of

8 inhumane prison conditions must meet both an objective and a subjective

9 requirement.  Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994), cert. denied sub

10 nom. Sakai v. Smith, 514 U.S. 1065 (1995). That is, when an inmate asserts that

11 prison officials have failed to fulfill this duty under the Eighth Amendment, the inmate

12 must show that the deprivation is objectively sufficiently serious and that officials

13 were "deliberately indifferent" to these basic needs.  Wilson v. Seiter, 501 U.S. 294,

14 303-304 (1991); Farmer, 511 U.S. at 832.  Under the objective component, the

15 prison official's acts or omissions must deprive an inmate of 'the minimal civilized

16 measure of life's necessities.'"  Allen, 48 F.3d at 1087 (citing Farmer, supra; Rhodes

17 v. Chapman, 452 U.S. 337, 347 (1981)).  Under the subjective component, "a prison

18 official may be held liable under the Eighth Amendment for denying humane

19 conditions of confinement only if he knows that inmates face a substantial risk of

20 serious harm and disregards that risk by failing to take reasonable measures to

21 abate it."  Farmer, 511 U.S. at 832.  A prison official may be entitled to qualified

22 immunity, however, if: (1) the law governing the official's conduct was clearly

23 established, and (2) under that law, a reasonable official would have believed his

24 conduct to be lawful.  Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th

25 Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 205 (2001) for the premise that the

26 deliberate indifference and qualified immunity tests are separate inquiries).

27 A supervisor may be found liable if either that person is directly involved in the

28 violation, or "if supervisory officials implement a policy so deficient that the policy

itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), cert. denied, 502 U.S. 1074 (1992). However, a "lack of funds" defense to deliberate indifference may be available to a supervisor unless it can be shown that the supervisor "knows of, but disregards an appropriate and sufficient alternative." La Marca v. Turner, 995 F2d 1526, 1541 (11th Cir. 1993). See also Wilson, 501 U.S at 311; Stone v. City & County of San Francisco, 968 F.2d 850, 858 (9th Cir. 1992) (holding generally that "federal courts have repeatedly held that financial constraints do not allow states to deprive persons of their constitutional rights").

"At least two routes can lead to the conclusion that a municipality has inflicted a constitutional injury." Gibson, 290 F.3d at 1185. In the first instance, a plaintiff may show that the municipality has either directly violated a constitutional right or ordered its employees to do so. Id. In the context of municipal liability for acts of deliberate indifference, "a municipality may not be held liable . . . unless 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or if the constitutional deprivation was 'visited pursuant to governmental 'custom even though such a custom has not received formal approval through the body's official decisionmaking channels.'" Redman, 942 F.2d at 1444 (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690-91 (1978)). See also City of Canton v. Harris, 489 U.S. 378, 388, 390 n. 10 (1989).

A plaintiff may also prevail against a municipality by demonstrating that through its *omissions*, "the county is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." Gibson, 290 F.3d at 1186. Because a

municipality cannot be held liable on a theory of *respondeat superior*, however, "a plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." Id. (citing City of Canton, supra). "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." Gibson, 290 F.3d at 1186 (citing Farmer, supra). That is, "when the need to remedy the omission 'is so obvious, and the inadequacy so likely to result in the violation of constitutional right, . . . the policy makers [of the county] can reasonably be said to have been deliberately indifferent to the need.'" Gibson, 290 F.3d at 1195 (citing City of Canton, supra). Fiscal constraints on a municipality may not serve as a defense if alternative or interim measures are available to reduce the risk of a constitutional violation. See generally Hale v. Tallapoosa County, 50 F.3d 1579, 1584 (11th Cir. 1995) (citing LaMarca, supra).

Pretrial detainees also possess a due process right to remain free from restrictions that amount to punishment. Redman, 942 F.2d at 1440-41. "Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, [the Court applies] the same standards." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The standards applicable to the specific claims of deliberate indifference (housing, etc.) will be further elaborated infra.

### a. Housing

As to the housing of inmates in day rooms or other temporary facilities, double bunking, and the provision of reasonable sleeping comfort (including the provisions of a mattress and/or bed and a blanket after 24 hours in initial custody), Defendants have recently opened the new intake areas of the 4th Avenue Jail, and the Lower Buckeye facility. Therefore, it is uncertain whether the alleged housing conditions still exist, even assuming such practices are unconstitutional. Further, Plaintiffs have

1   not cited a case that stands for the specific premise that those pretrial detainees

2   detained in an intake area *under* 24 hours must be provided a bed under the U.S.

3   Constitution.  Defendants have countered that their evidence establishes that those

4   pretrial detainees that remain in intake *over* 24 hours are provided a bed.

5        Therefore, in light of the uncertainties surrounding the operation of the new

6   jails after Defendants' presentation at the evidentiary hearing, the Court cannot find

7   as a matter or fact or law at this juncture that Defendants' housing policies amount

8   to cruel and unusual punishment or violate pretrial detainees' due process rights.

9        Accordingly, the Court will recommend that Plaintiffs' Motion for Partial Pretrial

10  Judgment as to ¶ ¶ 9.D., 9.F., 42, and 72.C be denied.

11               **b. The Provision of Medical and Mental Health Care**

12        Plaintiffs' Motion for Partial Pretrial Judgment challenges two areas of the

13  provision of health and mental care at the jail.  First, Plaintiffs aver that Dr.

14  Steinhauser has admitted that the mental health care unit was understaffed by one

15  psychiatrist, and that adequate care can be provided only when fully staffed.

16  Second, Plaintiffs argue that Defendants are not providing timely, initial health care

17  screening.

18        Under the burden of proof standard previously applied to proceedings in this

19  case, Defendants must initially demonstrate that the policies Plaintiffs challenge do

20  not manifest a "'deliberate indifference' to the medical needs of the inmates at the

21  jail" in violation of the Eighth Amendment.[12]  Estelle v. Gamble, 429 U.S. 97, 104

22  (1976). "Prison or jail officials 'show deliberate indifference to serious medical needs

23  if prisoners are unable to make their medical needs known to the medical staff.  To

24  find deliberate indifference by the County, it must be shown that it "(1) had a policy

25

26        [12] Although the instant case involves claims by pretrial detainees of deliberate

27  indifference, and not convicted prisoners, the Court applies an analogous standard
under the Fourteenth Amendment process clause.  Bell v. Wolfish, 441 U.S. 520,

28  535 n. 16 (1979); Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996).

1   that posed a substantial risk of serious harm to [pretrial detainees]; and (2) knew that

2   its policy posed this risk."  <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1188 (9th

3   Cir. 2002) (citing <u>Farmer v. Brennan</u>, 511 at 837).  "[The] duty to provide medical

4   care encompasses detainees' psychiatric needs."  <u>Cabrales v. County of Los</u>

5   <u>Angeles</u>, 864 F.2d 1454, 1461 (9th Cir. 1988), <u>vac'd</u>, 490 U.S. 1987 (1989), <u>opinion</u>

6   <u>reinstated</u>, 886 F.2d 235 (9th Cir. 1989), <u>cert. denied</u>, 494 U.S. 1091 (1990).  "As a

7   practical matter, 'deliberate indifference' can be evidenced by 'repeated examples

8   of negligent acts which disclose a pattern of conduct by the prison medical staff' or

9   it can be demonstrated by 'proving there are such systemic and gross deficiencies

10  in staffing, facilities, equipment, or procedures that the inmate population is denied

11  access to adequate medical care." <u>Wellman v. Faulkner</u>, 715 F.2d 269, 272 (7th Cir.

12  1983), <u>cert. denied</u>, 468 U.S. 1217 (1984).  <u>See also</u> <u>Feliciano v. Rullan</u>, 378 F.3d

13  42 (1st Cir. 2004) (upholding the district court's conclusion that denial of medical and

14  mental health services in Puerto Rican jails was "massive and systemic.").

15                              **i.    Mental Health Care**

16         The Court will recommend that the Motion for Partial Pretrial Judgment be

17  denied as to Plaintiffs' mental health care averments (¶¶ 56-57 of the Amended

18  Judgment).  While it is true that Dr. Steinhauser admitted on cross-examination that

19  adequate mental health care is provided if the unit is fully staffed and that at times

20  a staff vacancy may occur, the Court is not convinced at this juncture that one,

21  temporary staff vacancy, or the policies surrounding filling vacancies demonstrates

22  systematic, unconstitutional deliberate indifference to the serious mental health

23  needs of pretrial detainees.  Accordingly, the Court will recommend that Plaintiffs'

24  Motion for Partial Pretrial Judgment as to ¶ 56-57 be denied.

25                              **ii.    Medical Care**

26         The Court will recommend that the Motion for Partial Pretrial Judgment be

27  denied as to Plaintiffs' medical care averments.  Plaintiffs emphasize that the 1995

28  Amended Judgment requires compliance with NCCHC standards as to medical

1  screening (including a full physical within 14 days).  However, the question before

2  the Court, post-PLRA, is whether the jail is complying with U.S. Constitutional

3  standards.  The Court is not convinced that failure to adhere to NCCHC standards

4  regarding initial screening equates in every case, without evidence that violation of

5  the standard poses a substantial risk of serious harm, to a violation of the deliberate

6  indifference test set forth in Farmer v. Brennan, supra.  See also Hoptowit v. Ray,

7  682 F.2d 1237, 1256-57 (9th Cir. 1982) (stating, in the context of alleged Eighth

8  Amendment violations, that "it is error to constitutionalize the standards of particular

9  groups [e.g., the American Correctional Association]"); Women Prisoners of the D.C.

10  Dept. of Corrections v. District of Columbia, 93 F.3d 910, 929 (D.C. Cir. 1996), cert.

11  denied, 520 U.S. 1196 (1997) (noting that those practices the American Correctional

12  Association may find unacceptable may still be constitutional under U.S. Supreme

13  Court jurisprudence).  Plaintiffs have not provided evidence, either in fact or in law,

14  that NCCHC accreditation, even if NCCHC standards were the Constitutional norm,

15  requires that all pretrial detainees are provided a full medical evaluation within a 14-

16  day period when an initial, immediate screening procedure is used to identify those

17  detainees that require an immediate, full evaluation.  The initial screening process,

18  albeit not a full evaluation, provides detainees a route to have their medical concerns

19  heard and acted upon.  No evidence is currently before the Court that this screening

20  procedure has resulted in harm that equates to systematic deprivation of  detainees'

21  "minimal civilized measure of life's necessities."  Wilson v. Seiter, 501 U.S. 294, 304

22  (1991).  Accordingly, the Court will recommend that Plaintiffs' Motion for Partial

23  Pretrial Judgment as to ¶ 56-57 be denied.

24  ### c. Plumbing and Outdoor Recreation

25  18 U.S.C. § 3626 provides that:

26  (b) Termination of Relief.

27  (1) Termination of prospective relief.

28

(A) In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener–

. . . .

(iii) in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act [enacted April 26,1996], 2 years after such date of enactment.

. . . .

(2) Immediate termination of prospective relief.  In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

(3) Limitation.  Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct the violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

. . . .

18 U.S.C. § 3626(b)(1)-(3).  The Ninth Circuit has held that contested decrees (e.g., the Amended Judgment in this case) that predate the PLRA do not necessarily "flunk" the standard contained in section 1326(b)(3) because "[d]istrict courts were already bound to follow a nearly identical standard." Gilmore, 220 F.3d at 1006. However, a district court "cannot terminate prospective relief without determining whether the existing relief (in whole or in part) exceeds the constitutional minimum." Id. at 1007.

As an initial matter, it is uncertain at best whether the Court can enter partial judgment under Federal Rule of Civil Procedure 52(c) based on Defendants' alleged failure to address plumbing and outdoor recreation issues at the November 2003 evidentiary hearing.  Although the Ninth Circuit has placed the burden of proof on the party moving for termination, id. at 1007, both section 1326(b)(3), and the Ninth Circuit's decision in Gilmore, make it clear that a district court "*must* inquire into current conditions at a prison before ruling on a motion to terminate." Id. at 1008 (emphasis added).

1    Further, upon remand from the Ninth Circuit Court of Appeals, the Court
2  consistently made it clear to the parties that the scope of inquiry in this case is
3  limited to whether "prospective relief remains necessary to correct the violation of
4  [a] Federal right, extends no further than necessary to correct the violation of [a]
5  Federal right, and that the prospective relief is narrowly drawn and the least intrusive
6  means to correct the violation."  18 U.S.C. § 3626(b)(3).  The Court has never
7  indicated that Defendants would be required to address, at an evidentiary hearing,
8  each and every provision of the Amended Judgment.  Instead, on several occasions,
9  the Court has ordered that the parties file memoranda indicating which issues are
10  of *constitutional concern* that must be addressed through an evidentiary hearing.

11    Even if plumbing and outdoor exercise were a proper subject of an
12  evidentiary hearing in this case, from a review of the procedural history of this case,
13  the specific constitutional issues relating to "housing conditions"–outdoor exercise
14  and plumbing–were never clearly raised by either party.  In their November 2002
15  Report, Plaintiffs laid out, in detail, the issues for which they believed a hearing was
16  necessary.  [Doc. # 852].  Plaintiffs did not state in their Report that they sought a
17  hearing on *all* the provisions of the Amended Judgment.  In their November 2003
18  Pre-hearing Memorandum, Plaintiffs state in one sentence that there is a "[l]ack of
19  basic sanitation.   Vermin  infestation,  including  in  food  service  facilities.
20  Broken/nonfunctioning plumbing.   Sanitation and Safety are covered under
21  paragraphs 43 through 50 of the amended order." [Doc. # 920 at 9].  Plaintiffs further
22  aver, in one paragraph, that there is "[l]ack of necessary physical exercise; some
23  prisoners receive no outdoor exercise based on lack of staff.  Pargraph[s] 84-86 of
24  the Amended Order provides for excise [sic]." [Id.].

25    The April and May 2003 letters from Plaintiffs' counsel regarding appointment
26  of a special master refer generically to "housing conditions," but do not refer to
27  outdoor recreation or plumbing problems specifically.  None of the briefing regarding
28  the appointment of a special master filed in mid-2003 refers to these two topics.  At

1  the hearing addressing appointment of a special master, the assigned District Judge,

2  in one sentence, briefly referred to access to outdoor exercise.

3  Although invited to specifically spell-out all issues to be addressed at the

4  evidentiary hearing, both sides failed to clearly do so in their pre-hearing

5  memoranda.  Defendants cursorily refer to outdoor exercise and plumbing in their

6  November 14, 2003 memorandum, merely concluding that other district courts have

7  held that such conditions did not rise to a constitutional violation.  Plaintiffs are

8  equally guilty of cursory treatment in their pre-hearing briefs of what has now

9  become the subject of multiple pages of post-hearing briefing.  Plaintiffs state in two

10  short paragraphs in their pre-hearing memorandum that they believe outdoor

11  recreation and plumbing to be issues that Defendants must address.  It should be

12  further noted that despite the assigned District Judge's admonishment that he would

13  only address issues of constitutionality pursuant to the PLRA, and that not every

14  issue contained in the Amended Judgment would or could be addressed under the

15  PLRA's mandate, the only support Plaintiffs offer in their pre-hearing memorandum

16  for their contention that these areas rise to a constitutional question is that the

17  Amended Judgment requires outdoor exercise and functioning plumbing.  If Plaintiffs

18  felt that the issues of outdoor recreation and plumbing should have been addressed

19  at the November 2003 and January 2004 hearings, Plaintiffs could have provided

20  more detail so that both the Court and Defendants were apprized that Plaintiffs

21  intended to assert these unconstitutionality of these conditions.

22  Accordingly, the Court will recommend that as to outdoor recreation and

23  plumbing issues (¶¶ 47 and 84-86), Plaintiff's motion for partial judgment be denied.

24  The Court will also recommend that Defendants' supplemental evidence regarding

25  these issues to remain filed, and will recommend that Plaintiff's motion to exclude

26  such evidence be denied.  Plaintiff shall present the issues of outdoor exercise and

27  plumbing at the evidentiary hearing for their case-in-chief.

28

1

      **2. Defendants' "Motion to Compel Compliance With the Court's 1/21/04 Order and to Require Specification of All Alleged Current and Ongoing Constitutional Violations" (Doc. # 950)**

2

3        Plaintiffs' effort to specify issues for hearing appears to have begun by a letter

4  dated May 20, 2003, in which Plaintiffs stated to Defendants that they seek an

5  evidentiary hearing regarding:

6       1.  jail population and housing conditions;
         2.  medical services including psychiatric and psychological services;

7       3.  padlocked cells and the disciplinary process (procedure and punishment);
         4.  access to legal materials; and

8       5.  access to counsel.

9  [Doc. # 881, Exh. E]. These areas of concern are now referred to by Defendants as

10  the "five issue areas."  Plaintiffs provided a more detailed explanation of these

11  categories in their November 2003 Pre-hearing Memorandum. [Doc. # 920].

12  Unfortunately, this memorandum was filed four days prior to Defendants' evidentiary

13  presentation.  It appears, however, that Defendants did at least attempt to present

14  evidence on all areas that were mentioned in Plaintiffs' November 2003 Pre-hearing

15  Memorandum, except for outdoor recreation and plumbing issues.  <u>See supra</u>,

16  analysis.

17        Even though Plaintiffs had filed their November 2003 Pre-hearing

18  Memorandum, on January 20, 2004, the assigned District Judge, addressing

19  Plaintiffs' motion for experts, stated that "[t]he Court may deem it necessary at some

20  juncture to appoint an expert witness or witnesses concerning specific conditions at

21  Maricopa County jails.  However, the issues are not sufficiently narrowed to permit

22  an informed selection of any expert witness at this time." [Doc. # 938].  In that same

23  Order, Court ordered that Plaintiffs file an "outline of the specific concerns Plaintiffs

24  claim are at issue regarding the conditions in, and conduct at, the jails in question,

25  and how any condition or conduct rises to a constitutional violation. . . ." [<u>Id.</u> at 2].

26        Plaintiffs filed their outline in February 2004. [<u>See supra</u> pages 20-21].  Like

27  the November 2003 Pre-hearing Memorandum, the February 2004 outline contains

28  a list of potential constitutional violations with citation to case law.  However, the

1   February 2004 outline adds new claims of unconstitutionality and omits others that

2   were contained in the November 2003 Pre-hearing memorandum.  Further, the

3   Court notes that the some of the issues contained in the February 2004 outline were

4   not addressed by Plaintiffs on cross examination, or in the motion for partial pretrial

5   judgment.

6   In addition to the problem with inconsistencies, although Plaintiffs' November

7   2003 Pre-hearing Memorandum and February 2004 outline state the basic areas of

8   constitutional concern and contain case law citation, the documents fail to address

9   how a certain number of these issues are germane to litigation centered on the

10  *systemic* failures of the County to meet constitutional standards for pretrial

11  detainees.  That is, while many of Plaintiffs concerns could be litigated in the context

12  of an individual § 1983 action, Plaintiffs do not explain how each of their concerns

13  relates to a county policy of deliberate indifference or failure to meet due process

14  requirements.  For example, while Plaintiffs aver that Defendants fail to provide

15  timely access to competent health care providers, Plaintiffs do not specify whether

16  a policy exists governing the competency of providers and timing of health visits, and

17  how the county and/or its administrators fail to implement that policy.  A policy may

18  systemically fail for a number of reasons (e.g., lack of staffing or budgetary

19  constraints), but in the context of this litigation, the Court will not entertain allegations

20  that relate more to isolated incidents better handled at the individual level.  Plaintiffs'

21  vague averments impermissibly force the Court to speculate, when evaluating the

22  potential scope of expert and counsel access and discovery, how Plaintiffs intend to

23  prove their allegations that constitutional violations are occurring on a system-wide

24  basis.  Further, certain areas of concern raised by Plaintiffs in their November 2003

25  Pre-hearing Memorandum and February 2004 outline are likely moot in light of the

26  recent opening of new jails.

27  The Court, therefore, will grant Defendants' motion to compel compliance, and

28  will deny without prejudice (in part) Plaintiffs' motions regarding the appointment of

1　experts, expert access, discovery, and access by class counsel to current detainees,

2　and all other procedural motions associated with these motions.  The Court will grant

3　Plaintiffs' motion to compel discovery to the extent that all documents requested by

4　Plaintiffs for which Defendants have claimed the "self-critical analysis privilege" shall

5　be produced within 40 days of the filing of this Order.[13]  The Court will further compel

6　all inspection reports issued by *any* governmental agency as requested by Plaintiffs

7　in request number 4 and relating to medical or mental health care, or environmental

8　health and safety, for the years stated in the request.  In addition, Defendants shall

9　be required to respond to Plaintiffs' letter regarding missing responses to a request

10　for production of documents relating to budget requests contained at exhibit 11 to

11　document number 1002.

12　　　　　The Court will require a further and <u>final</u> submission by the Plaintiffs of an

13　omnibus motion, within 60 days of the filing of this Order, that provides the following:

14

15

16

17　　　　1. A numbered list of **each** specific area of current constitutional concern

18　　　　　　specifically addressed in the Amended Judgment.  In asserting allegations

19　　　　　　of unconstitutionality, Plaintiffs must take into account the recent opening

20　　　　　　of new jails.

21　　　　2. For **each** numbered area of constitutional concern:

22　　　　　　a. The basis of Plaintiffs' claim that a **systemic** constitutional violation is

23　　　　　　currently ongoing, including whether a county policy exists addressing the

24　　　　　　issue;

25

26

_____

27　　　　[13]  The Ninth Circuit has recently held that this privilege does not exist under

28　federal law.  <u>See</u> <u>Agster v. Maricopa County</u>, 406 F.3d 1091 (9th Cir. 2005).

1

b.  case law (without argument but including a summary of the holding)

2

that addresses that specific claim in the context of a systemic failure (that

3

is, citation to case law other than that in the individual context), or if none

4

exists, case law generally applicable to the claim of systemic failure to

5

meet constitutional requirements of detainees;

6

c.  a detailed explanation of what further discovery, expert and counsel

7

access, and expert appointment, if any, is relevant and why it is necessary

8

to demonstrate the systemic failure on that particular claim;

9

d.  Plaintiffs shall explain what documents have already been produced

10

that relate to the particular issue (including the documents compelled by

11

this Order after they have been received), and how further discovery

12

and/or appointment of an expert or access to pretrial detainees for

13

interviews is necessary to supplement Defendants' prior production.

14

e.  If Plaintiffs seek detainees' custodial (including classification), medical

15

or mental health records, Plaintiffs must explain the relevancy of the

16

documents to the issue, detail a procedure for sampling and analysis of

17

redacted records, and explain how such sampling and analysis will

18

potentially support a claim of systemic failure to meet constitutional

19

standards.

20

21

Defendants shall have 30 days to respond to Plaintiffs' omnibus motion.

22

**III.    Other Pending Motions**

23

The Court will grant Plaintiffs' motion for a protective order and motion to

24

quash subpoenas, to the extent that Defendants' proffered reason to depose

25

Plaintiffs' experts, pre-tour, has been rendered moot by this Order requiring further

26

specification by Plaintiffs of the issues presented for hearing.

27

The Court will grant Plaintiffs' motion related to the filing of declarations of

28

class members to the extent that the existing filed declarations shall remained filed.

1  Plaintiffs aver that the filing of the declarations was necessary to supplement their

2  motions for expert and counsel access, and discovery, all of which have been

3  addressed by this Order.

4       The Court will deny as moot Defendants' motion for entry of a scheduling

5  order, as the Court has, through this Order, addressed Defendants concern that the

6  case proceed in a timely manner.  Once Plaintiffs' omnibus motion is filed and

7  Defendants respond, the Court intends to expeditiously rule on the motion as it

8  relates to further discovery and access by Plaintiffs' experts and counsel.  The Court

9  further intends to set a date certain for Plaintiffs' evidentiary presentation once the

10  Court rules on Plaintiffs' discovery and access motions.  The parties are advised that

11  they should be prepared to complete discovery and proceed with a hearing on

12  Plaintiffs' case-in-chief diligently once ordered to do so.  The court will not consider

13  any motion for extension of time that would serve to further delay proceedings in this

14  case.

15  **IV.   RECOMMENDATION; ORDERS**

16       Based on the foregoing,

17       IT IS RECOMMENDED that Plaintiffs' "Motion for Partial Judgment" [Doc. #

18  946] be DENIED in its entirety.

19       This recommendation is not an order that is immediately appealable to the

20  Ninth Circuit Court of Appeals.  Any notice of Appeal pursuant to Rule 4(a)(1),

21  Federal Rules of Appellate Procedure, should not be filed until entry of the district

22  court's judgment.  The parties shall have ten (10) days from the date of service of

23  a copy of this recommendation within which to file specific written objections with the

24  Court.  28 U.S.C. §636(b)(1) and Rules 72, 6(a) and 6(e) of the Federal Rules of

25  Civil Procedure.  Failure to timely file objections to any factual determinations of the

26  Magistrate Judge will be considered a waiver of a party's right to *de novo*

27  consideration of the factual issues and will constitute a waiver of a party's right to

28

1  appellate review of the findings of fact in an order or judgment entered pursuant to

2  the Magistrate Judge's recommendation.

3      IT IS ORDERED that:

4      1.   The following motions are DENIED without prejudice to Plaintiffs' filing

5           of the omnibus motion explained herein:

6           a.  Plaintiffs' "Order for Appointment of Experts" [Doc. # 930];

7           b.  Plaintiffs' "Motion Pursuant to Fed. R. Civ. P. 37(a)(2)(B) to Compel

8               Defendants to Allow Expert Inspection" [Doc. # 958];

9           c.  Plaintiffs' "Motion Pursuant to Fed. R. Civ. P. 37(a)(2)(B) to Compel

10              Defendants to Produce Relevant Documents" [Doc. # 989].

11          d.  Plaintiffs' "Motion for Order Requiring Defendants to Allow Class

12              Counsel Access to Class Members" [Doc. # 1019]; and,

13          e.  Plaintiff's "Motion for Order Requiring Defendants to Allow Class

14              Counsel Access to Class Members" [Doc. # 1093].

15     2.   Plaintiffs' "Motion to Exclude 'Supplemental Evidence' Submitted by

16          Defendants" [Doc. # 969] is DENIED.   Defendants' supplemental

17          evidence regarding recreation and plumbing issues shall remain filed.

18          The Court will not reopen Defendants' presentation of their case-in-

19          chief to further address these issues.   Plaintiffs may present these

20          issues in their presentation of their case-in-chief.

21     3.   Plaintiffs' "Motion for Protective Order" [Doc. # 981-1] is GRANTED.

22     4.   Plaintiffs' "Motion to Quash Deposition Subpoenas" [Doc. # 981-2] is

23          GRANTED.

24     5.   Defendants' "Motion to Enter Scheduling Order" [Doc. # 998] is

25          DENIED as moot.

26     6.   Plaintiffs' "Motion to Exceed Page Limit on Reply Brief" [Doc. # 1003]

27          is GRANTED.

28

7. Plaintiffs' "Motion for Leave to File Declarations of Class Members and Former Class Members" [Doc. # 1026] is GRANTED to the extent contained herein.

8. Defendants' "Motion for Leave to File Supplemental Response to Address Certain Matters First Raised in Plaintiffs' Reply" [Doc. # 1027] is GRANTED.  The Supplemental Response shall remain filed.

9. Defendants' "Motion to Compel Compliance with the Court's 1/21/04 Order and to Require Specification of All Alleged Current and Ongoing Constitutional Violations" [Doc. # 950] is GRANTED as explained herein.

10. Defendants shall produce, within 40 days of the filing of this Order, the following documents:

   a. all documents requested by Plaintiffs through discovery for which Defendants have claimed the self-analysis privilege, including:

      i. morbidity/mortality and root cause analysis reports relating to suicides for 2001 through 2003 with identifying information redacted.

      ii. documents issued by the NCCHC to the County relating to the review and/or accreditation of jails by the NCCHC from January 1, 2000 to the present

      iii. the independent evaluations of health care services required by paragraph 70 of the Amended Judgment from January 1, 2000 to present.

      iv. all inspection reports issued by *any* governmental agency as contained in Plaintiffs' request number 4 and relating to medical or mental health care, or environmental health and safety, for the years stated in the request.

v.  all minutes of any meetings of Correctional Health Services staff or contract health care providers from January 1, 2001 to present, subject to Defendants' filing of a motion for protective order.

b.  Defendants shall submit formal discovery responses, including but not limited to objections, to Plaintiffs as to Plaintiffs' letter at exhibit 11 to Document number 1002 relating to Plaintiffs' requests for documents relating to budget requests for jail funding.

11.  Plaintiffs shall have 60 days from the date of the filing of this Order to file an omnibus motion as instructed herein.

DATED this 30th day of September, 2005.

Morton Sitver
United States Magistrate Judge

- 40 -