**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fred Graves, Isaac Popoca, on their own behalf and on behalf of a class of all pretrial detainees in the Maricopa County Jails, ) ) ) ) | No. CV-77-0479-PHX-NVW |
| Plaintiffs, ) | **ORDER** |
| vs. ) | |
| Joseph Arpaio, Sheriff of Maricopa County; Fulton Brock, Don Stapley, Andrew Kunasek, Max W. Wilson, and Mary Rose Wilcox, Maricopa County Supervisors; ) ) ) ) ) | |
| Defendants. ) | |

Pending before the Court is Plaintiffs' Motion for Attorneys' Fees and Non-taxable Costs.  (Doc. #1640.)

**I.   Background**

In 1977 this class action was brought against the Maricopa County Sheriff and the Maricopa County Board of Supervisors alleging that the civil rights of pretrial detainees held in the Maricopa County, Arizona, jail system had been violated.  (Doc. #1.)  In 1981 the parties entered into a consent decree that addressed and regulated aspects of County jail operations as they applied to pretrial detainees.  (Doc. #166.)

In 1995 the initial consent decree was superseded by an Amended Judgment entered by stipulation of the parties.  (Doc. #705.)  The Amended Judgment provided

1  relief regarding the following:  population/housing limitations, dayroom access, natural

2  light and windows, artificial lighting, temperature, noise, access to reading materials,

3  access to religious services, mail, telephone privileges, clothes and towels, sanitation,

4  safety, hygiene, toilet facilities, access to law library, medical care, dental care,

5  psychiatric care, intake areas, mechanical restraints, segregation, outdoor recreation,

6  inmate classification, visitation, food, visual observation by detention officers, training

7  and screening of staff members, facilities for the handicapped, disciplinary policy and

8  procedures, inmate grievance policy and procedures, reports and record keeping, security

9  override, and dispute resolution.

10      In 1998 Defendants filed a motion to terminate the Amended Judgment pursuant to

11  the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626 and 42 U.S.C. § 1997e.

12  (Doc. #755.)  Judge Earl H. Carroll denied the motion to terminate, relying on *Taylor v.*

13  *United States*, 143 F.3d 1178 (9th Cir. 1998), which held the decree termination provisions

14  of the PLRA to be unconstitutional.  (Doc. #774.)  Defendants appealed from the denial

15  of their motion for termination.  (Doc. #777.)  The *Taylor* panel opinion subsequently was

16  withdrawn.

17      On January 25, 2001, the Ninth Circuit issued a memorandum decision reviewing

18  the denial of Defendants' motion to terminate the Amended Judgment.  (Doc. #799.)

19  Acknowledging that *Gilmore v. California*, 220 F.3d 987 (9th Cir.2000), held the PLRA

20  decree termination provision constitutional and controlled the appeal, it reversed and

21  remanded for proceedings consistent with *Gilmore*.  (Doc. #799.)

22      On September 25, 2001, Defendants renewed their motion to terminate.  (Doc.

23  #821).  On September 12, 2002, Judge Carroll denied Defendants' renewed motion to

24  terminate without prejudice subject to findings to be entered following an evidentiary

25  hearing.  (Doc. #840.)  On November 14, 2003, Defendants filed a pre-hearing

26  memorandum in support of a renewed motion to terminate, which operated as a second

27  renewed motion to terminate the Amended Judgment.  (Doc. #906.)

28

1    On November 25, 2003, and January 22, 2004, Judge Carroll began hearing

2 evidence on Defendants' motion. (Doc. ##918, 939.)  The parties engaged in further

3 discovery, but the hearing was not completed.  On April 3, 2008, Judge Carroll caused the

4 case to be reassigned, and it subsequently was assigned to the undersigned judge.  (Doc.

5 ##1222, 1234.)  On April 25, 2008, this Court set Defendants' motion to terminate the

6 Amended Judgment for evidentiary hearing commencing August 12, 2008.  (Doc. #1241.)

7 Evidence was received and argument heard on August 12-15, 19-22, 28-29, 2008, and

8 September 3-5, 2008.  From May to August 2008, the parties conducted a substantial

9 amount of discovery, including tours of five jail facilities with experts, review of medical

10 records at each facility, and numerous depositions of fact and expert witnesses.

11    Based upon the pre-hearing and post-hearing briefing, oral argument, and the

12 evidence presented, the Court made findings of fact and conclusions of law on October

13 22, 2008.  (Doc. #1634.)  With respect to the Amended Judgment, the Court found some

14 provisions exceeded constitutional minimums, some provisions did not exceed

15 constitutional minimums but are no longer necessary to correct current and ongoing

16 violations of federal rights, and some provisions did not exceed constitutional minimums

17 and continue to be necessary to correct current and ongoing violations of federal rights of

18 pretrial detainees.  The Court expressly found:

19    475.  . . . .  Plaintiffs have proven, or Defendants failed to disprove,
current and ongoing violations of constitutional right and of the Amended
20 Judgment as originally written or as narrowed by the Second Amended
Judgment.  Defendants are in breach of the Amended Judgment as found in
21 these findings and conclusions and as it is restated and narrowed by the
Second Amended Judgment entered this day.
22
   . . . .
23
   478.  Pursuant to 42 U.S.C. § 1988(b) for the award of attorney fees,
24 Plaintiffs are the prevailing parties on Defendants' Renewed Motion to
Terminate the Amended Judgment (doc. #906) and its predecessors.
25
   479.  Subject to the limitations of 42 U.S.C. § 1997e(d), Plaintiffs are
26 entitled to award of attorney fees incurred in defending against the motion.
Fees may be claimed under the procedures in Fed. R. Civ. P. 54(d)(2) and
27 LRCiv 54.2 upon entry of this order.  If enforcement proceedings become
necessary, future fees may be claimed and will be determined and awarded
28 at appropriate intervals during the enforcement proceedings.

- 3 -

On October 22, 2008, the Court also entered the Second Amended Judgment, which vacated the Amended Judgment as to future effect and restated the portions of the Amended Judgment that continue in effect, as originally written or as modified.  (Doc. #1635.)  The Second Amended Judgment ordered prospective relief regarding the numbers of pretrial detainees housed in cells and placed in holding cells; the maximum temperature in housing of pretrial detainees taking prescribed psychotropic medications; cleaning supplies and sanitization of cells prior to occupancy by pretrial detainees; toilets, sinks, toilet paper, and soap in intake areas and court holding cells; receiving screenings; access to care for serious medical and mental health needs; continuity of prescription medications; continuous monitoring in intake areas; access to toilet and wash basin facilities in intake areas; provision of a blanket and a bed or mattress for pretrial detainees held in an intake area for more than twenty-four hours; outdoor exercise; food; visual observation of pretrial detainees in intake areas, court holding cells, the psychiatric unit, and segregation units; incident reports; and compliance records and quarterly summaries.

On October 28, 2008, Plaintiffs filed their Motion for Attorneys' Fees and Non-taxable Costs.  (Doc. #1640.)  Oral argument on the motion was held on March 27, 2009. (Doc. #1791.)

## II.    Legal Standard

Any award of attorneys' fees and non-taxable costs in this civil rights action by pretrial detainees must be authorized by 42 U.S.C. § 1988 and comply with limits imposed by 42 U.S.C. § 1997e(d).  Section § 1997e(d)(1) begins:

> In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that. . . .

The Tenth Circuit has described the relationship between § 1988 and § 1997e(d) as follows:

> It is worth remembering that the American Rule is that the losing party in litigation is not required to reimburse the prevailing party's attorney fees. An award of attorney fees under 42 U.S.C. § 1988 is a departure from general practice, presumably designed as an incentive to plaintiffs to engage

in litigation to vindicate civil rights.  Section 1997e(d) reduces that
incentive in civil-rights suits by prisoners. . . .

*Robbins v. Chronister*, 435 F.3d 1238, 1244 (10th Cir. 2006) (citation omitted).  *See also Dannenberg v. Valadez*, 338 F.3d 1070, 1075 (9th Cir. 2003) (a reasonable fee award under § 1997e(d) required consideration of the degree of success analyzed under § 1988 principles); *Siripongs v. Davis*, 282 F.3d 755, 757 (9th Cir. 2002) (where prisoner sought fees under § 1988, his recovery was restricted by the PLRA); *Johnson v. Daley*, 339 F.3d 582, 593-94 (7th Cir. 2003) (en banc) (award of fees under § 1997e(d) required satisfaction of the reasonableness requirement in § 1988).

### A.  Section 1988

In any action or proceeding to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988.  Prevailing parties in civil rights litigation "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotations and citation omitted).  To qualify as a "prevailing party":

> . . . a civil rights plaintiff must obtain at least some relief on the merits of
> his claims.  The plaintiff must obtain an enforceable judgment against the
> defendant from whom fees are sought or comparable relief through a
> consent decree or settlement. . . .  In short, a plaintiff "prevails" when
> actual relief on the merits of his claim materially alters the legal relationship
> between the parties by modifying the defendant's behavior in a way that
> directly benefits the plaintiff.

*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (citations omitted).  The magnitude of the relief does not affect a plaintiff's eligibility for a fee award under § 1988.  *Id.* at 114.

After determining the plaintiff is the prevailing party, the court must calculate a reasonable fee award, which usually involves a two-step process:

> First, the court must calculate the "lodestar figure" by taking the number of
> hours reasonably expended on the litigation and multiplying it by a
> reasonable hourly rate.  Second, the court must decide whether to enhance
> or reduce the lodestar figure based on an evaluation of the *Kerr* factors that
> are not already subsumed in the initial lodestar calculation.

1   *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citations and footnote

2   omitted).  The *Kerr* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly; (4)
> the preclusion of other employment by the attorney due to acceptance of the
> case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)
> time limitations imposed by the client or the circumstances; (8) the amount
> involved and the results obtained; (9) the experience, reputation and ability
> of the attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12) awards in
> similar cases.

8   *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Morales v. City of San*

9   *Rafael*, 96 F.3d 359, 363-64 & n.8 (9th Cir. 1996); *see* LRCiv 54.2(c)(3).  Factors (1)

10  through (4) and (6) are taken into account in either the reasonable hours component or the

11  reasonable rate component of the lodestar calculation.  *Morales*, 96 F.3d at 364 n.9.

12  Factors (5) and (7) through (12) are considered in determining whether to adjust the

13  presumably reasonable lodestar figure.  *Id.*

14          Under § 1988, a district court may, in its discretion, reduce a fee award based on

15  "limited success" achieved by applying another two-step process.  *Hensley*, 461 U.S. at

16  434-437; *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).  First, the court

17  determines whether the plaintiff failed to prevail on claims unrelated to claims on which

18  he succeeded.  *Id.* (both).  To be "unrelated," claims must be "entirely distinct and

19  separate" from claims on which the plaintiff prevailed.  *Sorenson*, 239 F.3d at 1147;

20  *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995).  Work on related

21  claims are deemed to have been "expended in pursuit of the ultimate result achieved."

22  *Hensley*, 461 U.S. at 435.  The final fee award may not include time expended on

23  unrelated, unsuccessful claims.  *Id.*  As a general rule, under § 1988:

> [P]laintiffs are to be compensated for attorneys' fees incurred for services
> that contribute to the ultimate victory in the lawsuit.  Thus, even if a
> specific claim fails, the time spent on that claim may be compensable, in
> full or in part, if it contributes to the success of other claims.

*Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991).

1    Second, the court determines whether the hours reasonably expended on the

2    litigation are commensurate with the significance of the overall relief plaintiff obtained.

3    *Hensley*, 461 U.S. at 435; *Sorenson*, 239 F.3d at 1147. "Where a plaintiff has obtained

4    excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461

5    U.S. at 435; *Sorenson*, 239 F.3d at 1147. "A plaintiff may obtain excellent results

6    without receiving all the relief requested." *Sorenson*, 239 F.3d at 1147; *see Friend v.*

7    *Kolodzieczak*, 72 F.3d 1386, 1390-91 (9th Cir. 1995) (inmate plaintiffs prevailed on a

8    significant portion of relief sought by gaining expanded access to Roman Catholic

9    services and sacraments and explicit, written acknowledgment of the right to at least

10   limited use of rosaries and scapulars even though the district court granted defendants'

11   motion for summary judgment on the issue of whether jail officials were required to

12   permit inmates unlimited access to rosaries and scapulars at all times). In determining the

13   extent of a plaintiff's success, a district court should consider significant nonmonetary

14   results achieved not only for the plaintiff, but also for other members of society. *Morales*,

15   96 F.3d at 365.

16   **B.  Section 1997e(d)**

17   Under the PLRA,

18   In any action brought by a prisoner who is confined to any jail, prison, or
19   other correctional facility, in which attorney's fees are authorized under
     section 1988 of this title, such fees shall not be awarded, except to the
20   extent that--

21   (A) the fee was directly and reasonably incurred in proving an actual
     violation of the plaintiff's rights protected by a statute pursuant to
22   which a fee may be awarded under section 1988 of this title; and

23   (B)(i) the amount of the fee is proportionately related to the court
     ordered relief for the violation; or

24   (ii) the fee was directly and reasonably incurred in enforcing the
     relief ordered for the violation.
25
     42 U.S.C. § 1997e(d)(1) (footnote omitted). "[W]hen subsections (A) and (B) are read
26
     together, it is apparent that a plaintiff is entitled to fees incurred in enforcing a judgment
27
     entered upon proof that the plaintiff's constitutional rights had been violated." *Webb v.*
28

1  *Ada County*, 285 F.3d 829, 834 (9ᵗʰ Cir. 2002).  Moreover, the PLRA defines relief as "all

2  relief in any form that may be granted or approved by the court, and includes consent

3  decrees." *Id.* at 834-35 (quoting 18 U.S.C. § 3626(g)(9)).  Thus, the PLRA permits

4  compensation for attorneys' fees incurred for postjudgment enforcement of court orders

5  and a consent decree as well as for "proving an actual violation of the plaintiff's rights."

6  *Id.* at 835.  *See also Cody v. Hillard*, 304 F.3d 767, 776 (8ᵗʰ Cir. 2002) (subsection (A)

7  must permit some fee awards for enforcement work to allow some effect to (B)(ii)).

8  Further, postjudgment enforcement includes defending against efforts to terminate a

9  consent decree.  *Id.* at 777.

10     Section 1997e(d)'s limitation of a fee award to fees "directly and reasonably

11  incurred in proving an actual violation" and "proportionately related to the court ordered

12  relief for the violation," in effect, codifies *Hensley* requirements that district courts award

13  only fees related to successful claims and commensurate with the extent of success.  *See,*

14  *e.g.*, *Riley v. Kurtz*, 361 F.3d 906, 916 (6ᵗʰ Cir. 2004):

15     To this court's mind, the "related claim" limitation set out in *Hensley* has
   been incorporated into the fee limitation section of the PLRA.  Although
16   stated differently, this limitation on attorney's fees is like the limitation in
   the PLRA—attorney's fees are only available if "the fee was directly and
17   reasonably incurred in proving an actual violation of the plaintiff's
   rights. . . ." 42 U.S.C. § 1997e(d)(1)(A).
18

19     During oral argument, counsel for the Board Defendants argued that after

20  enactment of the PLRA, *Hensley* no longer applies in prisoner civil rights cases.  Because

21  this argument had not been briefed, both parties were permitted to submit supplemental

22  briefing on the legislative history of § 1997e(d)(1) and the intended effect of

23  § 1997e(d)(1) on application of the *Hensley* standards.  The legislative history submitted

24  shows that Congress intended the PLRA to deter frivolous prisoner litigation and to

25  prevent states from being forced to pay excessive amounts for attorneys' fees incurred

26  proving minimal violations of prisoners' rights.  None of the legislative history submitted

27  refers to *Hensley* or indicates legislative intent to overrule judicial law on fee awards

28  under § 1988.  A House Report regarding a draft bill that included most of § 1997e(d)(1)

- 8 -

1    except for (d)(1)(B)(ii), which permits fees for enforcement, indicates the fee subsection

2    is intended to "narrow" the circumstances in which fees may be awarded:

> [I]t narrows the judicially created view of a "prevailing party" so that a
> prisoner's attorney will be reimbursed only for those fees reasonably and
> directly incurred in proving an actual violation of a federal right.
> Narrowing the definition of "prevailing party" will eliminate both attorney
> fees that penalize voluntary improvements in prison conditions and attorney
> fees incurred in litigating unsuccessful claims, regardless of whether they
> are related to meritorious claims.  While this provision eliminates the
> financial incentive for prisoners to include numerous non-meritorious
> claims in sweeping institutional litigation, it retains the financial incentive
> to bring lawsuits properly focused on prison conditions that actually violate
> federal law.

9    (Doc. # 1794-2, Exh. A, H.R. Rep. No. 104-21 at 28 (Feb. 6, 1995)).  *See Riley*, 361 F.3d

10   at 914.  Reviewing this House Report in *Riley*, the Sixth Circuit concluded that Congress

11   intended, in prisoner civil rights litigation, to limit the definition of prevailing party to

12   prisoners who satisfy the conditions of § 1997e(d)(1), but also held § 1997e(d)(1)(A)

13   incorporated *Hensley*'s "related claim" limitation.  *Id.* at 915-16.

14           The only apparent contradiction between the House Report and *Hensley* relates to

15   whether fees incurred on unsuccessful claims *related* to successful claims are

16   compensable.  Under *Hensley*, fees incurred for unsuccessful claims may be awarded if

17   the unsuccessful claims are related to the successful claims, but the House Report

18   suggests otherwise.  The Ninth Circuit, however, ordered a district court deciding a fee

19   award under § 1997e(d)(1) to consider the "degree of success" under *Farrar* and *Hensley*

20   where the plaintiff lost two claims on summary judgment and prevailed against four of

21   eight defendants on another claim.  *Dannenberg v. Valadez*, 338 F.3d 1070, 1075-76 (9th

22   Cir. 2003).  The Ninth Circuit did not direct the district court to deviate from *Hensley* and

23   its progeny, and its summary description of the claims suggests the unsuccessful claims

24   were distinct and separate from the successful claims.  This Court must follow Ninth

25   Circuit precedent.

26           Moreover, Plaintiffs were not required to prove violations or to defeat Defendants'

27   motion (which they did) in order to obtain a fee award.  They would be entitled to a fee

28   award even if all they did was to enforce relief previously ordered by defending against

1    Defendants' motion.  It was Defendants' burden to prove the absence of constitutional

2    violations for each provision of the Amended Judgment they sought to be terminated.

3           Although § 1997e(d)(1) may not restrict a fee award beyond limitations imposed

4    by *Farrar* and *Hensley*, § 1997e(d)(3) limits the fee award by establishing a maximum

5    hourly rate for attorneys' fees.  The maximum hourly rate upon which an award for

6    attorneys' fees may be based is 150 percent of the hourly rate established for payment of

7    court-appointed counsel under 18 U.S.C. § 3006A.  The parties agree the rate applicable

8    here is $169.50 per hour.

9    **III.   Analysis**

10          **A.   Prevailing Party Under § 1988**

11          To succeed on their motion to terminate the Amended Judgment, Defendants were

12   required to prove the relief granted by the Amended Judgment is not narrowly drawn,

13   extends further than necessary to correct the violation of a federal right, or is not the least

14   intrusive means necessary to correct a violation of a federal right and that prospective

15   relief is not necessary to correct a current and ongoing violation.  *Gilmore v. California*,

16   220 F.3d 987, 1007-08 (9th Cir. 2000); 18 U.S.C. § 3626(b)(2).  Defendants failed to

17   satisfy their burden of proof in each of the categories of disputed provisions (*e.g.*, food,

18   outdoor recreation, sanitation, medical care), and Plaintiffs succeeded in proving at least

19   one constitutional violation in each of the categories except food.  Most of the prospective

20   relief Plaintiffs obtained was substantial.

21          Defendants contend that Plaintiffs are not the prevailing party as to all issues

22   because Plaintiffs withdrew their opposition to the termination of certain paragraphs of

23   the Amended Judgment shortly before or during the evidentiary hearing and Plaintiffs did

24   not obtain all of the relief they sought regarding other areas of dispute.  Although

25   Defendants' contentions are relevant to whether the fee award should be reduced for

26   limited success, failure to obtain all of the relief sought does not prevent or deprive

27   Plaintiffs of prevailing party status under § 1988.

28

1    Plaintiffs successfully defended against the termination of substantial portions of

2  the Amended Judgment.  Further, Plaintiffs obtained a new enforceable judgment that

3  provided relief on the merits of their claims and materially altered the legal relationship

4  between the parties by modifying the Defendants' behavior in a way that directly

5  benefited the Plaintiffs.  Therefore, under § 1988, Plaintiffs qualify as the prevailing party

6  for award of attorneys' fees.  *See Farrar*, 506 U.S. at 111-12.

7        **B.   The Initial Lodestar Figure With Hourly Rate Limited by § 1997e(d)**

8    The initial lodestar figure is calculated by multiplying the number of hours

9  reasonably expended on the litigation by a reasonable hourly rate.  The parties agree that

10  § 1997e(d)(3) caps the hourly rate at $169.50, a rate that is far below reasonable and

11  market value in light of the qualifications and experience of Plaintiffs' lead counsel.

12  Plaintiffs have submitted itemized billing statements to support their request of

13  $1,239,491.63 in attorneys' fees, not exceeding the hourly rate of $169.50.[1]

14    To determine the reasonableness of the award, the Court considers the following

15  *Kerr* (*Hensley*) factors:  (1) the time and labor required; (2) the novelty and difficulty of

16  the questions; (3) the skill requisite to perform the legal service properly; (4) the

17  preclusion of other employment by the attorney due to acceptance of the case; and (6)

18  whether the fee is fixed or contingent.  *See Kerr*, 526 F.2d at 70; *Hensley*, 461 U.S. at 430

19  n.3;  *Morales*, 96 F.3d at 364 n.9; LRCiv. 54.2(c)(3).

20    Representing the class of all pretrial detainees in the Maricopa County Jails, which

21  includes five different facilities, a centralized intake area, court holding cells, medical

22  facilities, and a psychiatric unit, to defend and enforce the Amended Judgment for more

23  than five years and to obtain the prospective relief ordered in the Second Amended

24  Judgment required substantial time and labor.  Given PLRA's intent that motions to

25  terminate prospective relief regarding prison conditions be resolved quickly, that

26

27        [1] Plaintiffs reduced their initial request to adjust for clerical errors in their billing

28  statements.

1  resolution of Defendants' motion to terminate the Amended Judgment had been delayed

2  for more than seven years, and that Plaintiffs had been deprived of relief during the

3  automatic stay of the Amended Judgment during that period, it was necessary for the

4  parties to conduct substantial discovery and preparation for an evidentiary hearing in less

5  than four months.

6       Although most of the questions presented were not novel, many were difficult and

7  complex.  Determining the constitutionality of jail conditions requires weighing risk to a

8  pretrial detainee's health and safety against the need for restrictions to protect the security

9  of all pretrial detainees, detention officers, and the community.  Procedural issues in this

10  case tended to be complex and included some that were novel.  Conducting discovery,

11  marshaling evidence on a wide range of complex issues, and presenting evidence during a

12  thirteen-day evidentiary hearing required considerable skill.

13       Representing Plaintiffs as described above required virtually full-time work by

14  four attorneys for a period of four months.  Further, the commitment of these attorneys'

15  time and the advancement of costs limited their ability to take on new cases.  Plaintiffs'

16  counsel will not receive any compensation for their work in this case except as awarded

17  by the Court.

18       The initial lodestar figure requested by Plaintiffs, which does not exceed the

19  maximum hourly rate permitted by the PLRA, is reasonable in light of the foregoing

20  consideration of *Kerr* factors.

21       **C.   Adjustment of the Lodestar Figure**

22       To determine whether the presumptively reasonable lodestar figure, capped under

23  § 1997e(d), should be adjusted upward or downward, the Court considers the remaining

24  *Kerr* factors, the degree of Plaintiffs' success, and compliance with conditions imposed

25  by § 1997e(d).

26       **1.   *Kerr* Factors Not Subsumed in the Initial Lodestar Calculation**

27       In deciding whether to adjust the initial lodestar figure, the Court considers:  (5)

28  the customary fee; (7) time limitations imposed by the client or the circumstances; (8) the

- 12 -

1  amount involved and the results obtained; (9) the experience, reputation and ability of the

2  attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

3  professional relationship with the client; and (12) awards in similar cases. *See Kerr*, 526

4  F.2d at 70; *Hensley*, 461 U.S. at 430 n.3; *Morales*, 96 F.3d at 364 n.9; LRCiv. 54.2(c)(3).

5          The hourly rate requested by Plaintiffs and mandated by the PLRA is far less than

6  the customary hourly rate.  The circumstances imposed significant time limitations on

7  counsel for all parties.  Plaintiffs' lead counsel are extremely experienced and capable

8  attorneys.  Written work and oral advocacy performed on behalf of Plaintiffs were of very

9  high quality.  This case is considered "undesirable" because § 1983 class actions on

10 behalf of prisoners involving the conditions of confinement are exceedingly fact-

11 intensive, time-consuming, and expensive to litigate, and the PLRA restricts the hourly

12 rate for attorneys' fees below market.  Counsel's professional relationship with Plaintiffs

13 began more than five years ago.  The amount sought here is reasonable in light of awards

14 in similar cases.

15         Plaintiffs successfully defended against Defendants' motion to terminate the

16 Amended Judgment and obtained significant prospective relief in every major area in

17 which they sought relief.  Plaintiffs did not seek monetary damages.

18         Plaintiffs do not request that the initial lodestar figure be adjusted upward, and the

19 Court finds no basis for adjusting the initial lodestar figure downward in consideration of

20 the remaining *Kerr* factors.

21              **2.  Degree of Success**

22         Defendants contend that Plaintiffs' fee award should be reduced for limited

23 success on their claims.  However, Defendants bore the burden of proof on their motion

24 to terminate the Amended Judgment and they failed to carry their burden on some or all

25 issues in every major area litigated.  Applying the *Hensley* two-step process for reducing

26 a fee award for "limited success," the Court finds (1) Plaintiffs did not fail to prevail on

27 any claims unrelated to claims on which they succeeded, and (2) the hours reasonably

28

1   expended on the litigation are commensurate with the significance of the overall relief
2   Plaintiffs obtained.

3          Defendants carried their burden of proof on overcrowding in some areas of the
4   Towers jail, the Estrella jail, and the Durango Housing Units D8 and D9, but they did not
5   on overcrowding in the Towers segregation cells, Madison court holding cells, or 4th
6   Avenue Intake holding cells.  Defendants did not carry their burden on proving portable
7   beds will not be used routinely in some jail facilities.  Plaintiffs did not contend that
8   pretrial detainees' access to dayrooms is constitutionally required, but they did prove that,
9   under the current conditions, access to dayrooms does not compensate for insufficient
10  outdoor recreation.

11         Defendants proved they provide inmates with cleaning supplies, but not that they
12  consistently provide sufficient supplies for effective cleaning to avoid unconstitutional
13  health risks to pretrial detainees.  Defendants failed to prove they provide administrative
14  segregation pretrial detainees with adequate opportunity to clean their cells to avoid
15  unconstitutional health risks to pretrial detainees.  Defendants failed to prove cells are
16  consistently cleaned and sanitized prior to occupancy by pretrial detainees to avoid
17  causing unconstitutional health risks.

18         Defendants proved that ambient temperatures in housing areas generally do not
19  exceed constitutional limits, but did not prove the temperatures in which pretrial detainees
20  taking prescribed psychotropic medications are housed are safe.  Defendants proved fire
21  protection equipment and procedures meet constitutional requirements and that the
22  Maricopa County Jails are not constitutionally required to conduct fire drills involving
23  pretrial detainees.  Defendants proved that although barriers separating detention officers
24  in control towers at the Towers and Estrella jails may delay detention officers in
25  responding to calls for help, the barriers are reasonably related to legitimate governmental
26  objectives of safety and security.  However, Plaintiffs proved that detention officers do
27  not adequately monitor pretrial detainees in intake and court holding cells.

28

1    Defendants failed to prove they prepare incident reports of all instances of inmate

2  or officer abuse, injuries, violence, assaults, sexual assaults, suicides, deaths, and inmate

3  riots and demonstrations.  Plaintiffs proved that incident reports are not always prepared

4  even when a pretrial detainee requires medical treatment as a result of an incident.

5    Defendants proved that Defendants' current provision of functioning toilets,

6  showers, and sinks does not violate pretrial detainees' constitutional rights in housing

7  units, but did not prove the provision of toilets, sinks, toilet paper, and soap is

8  constitutionally adequate in the 4th Avenue Intake holding cells and the Madison court

9  holding cells.  Further, Plaintiffs proved prospective relief remained necessary to ensure

10  that pretrial detainees have access to toilet and wash basin facilities in the holding cells in

11  intake areas and pretrial detainees incarcerated in the intake area for more than twenty-

12  four hours are provided with a blanket and a bed or mattress on which to sleep.

13    Defendants attempted to prove, but did not, that they provide general population

14  pretrial detainees opportunity for outdoor exercise one hour per day, six days per week at

15  the Towers, Durango, and Estrella jails.  Defendants also attempted to prove, but did not,

16  that pretrial detainees can do physical exercise in their cells, or in their cells and

17  dayrooms, sufficient to meet their constitutional entitlement.  Although Plaintiffs sought

18  to obtain opportunity for outdoor exercise at least one hour per day, six days per week,

19  the Court found that one hour per day, four days per week, would satisfy the

20  constitutional minimum.  However, Defendants failed to prove they offer general

21  population pretrial detainees opportunity for outdoor exercise at least one hour per day,

22  four days per week, and prospective relief remained necessary to correct a current and

23  ongoing violation of the pretrial detainees' federal right to outdoor exercise.  The Court

24  further found that the 4th Avenue jail recreation yards do not provide sufficient space to

25  satisfy pretrial detainees' constitutional right to outdoor exercise one hour per day, four

26  days per week, and permitting pretrial detainees to exercise outdoors without drinking

27  water when the outside temperature exceeds 85° F. does not satisfy the constitutionally

28  required opportunity for outdoor exercise.  Defendants also failed to prove that pretrial

1  detainees classified as administrative segregation were provided with constitutionally

2  adequate opportunity for outdoor exercise.

3          Defendants did not carry their burden of proving that they provide pretrial

4  detainees adequate nutrition.  The Court expressly found:

5              406.  Defendant Arpaio cannot establish what edible food inmates
           actually received during much of the relevant period.
6              407.  Defendant Arpaio cannot establish that pretrial detainees are
           served adequate nutrition.
7              408.  The Maricopa County Jails dietician's opinion that pretrial
           detainees are served adequate nutrition is not supported by the evidence, is
8          contrary to evidence, and is unworthy of belief.  The Court does not believe
           it.
9
   (Doc. #1634.)
10
           Defendants carried their burden of proving pretrial detainees are not deprived of
11
   their constitutional right to emergency dental care and that the jail facilities have adequate
12
   emergency medical equipment.  However, Defendants did not carry their burden in
13
   proving that pretrial detainees' access to medical, dental, and mental health care meets
14
   constitutional minimums.  Among other things, Plaintiffs proved:
15
               177.  Systemic deficiencies in the screening process significantly
16          impair continuity of care and result in failure to identify pretrial detainees
           with immediate medical needs.
17
               216. . . .Defendants do not ensure that pretrial detainees receive access
18          to adequate medical and mental health care because Correctional Health
           Services does not provide timely in-person assessment of the urgency of
19          their need for treatment, is not able to readily retrieve information from
           pretrial detainees' medical and mental health records and housing records,
20          and does not identify and appropriately treat many pretrial detainees with
           serious mental illness.
21
               233.  In addition to inconsistencies in obtaining necessary prescription
22          information during the intake process, Correctional Health Services does
           not consistently ensure that all pretrial detainees actually receive all
23          prescribed medications as ordered.

24  (Doc. #1634.)

25          Therefore, Defendants did not satisfy their burden of proof on any disputed issue

26  that was entirely distinct and separate from the issues on which Plaintiffs successfully

27  defended.  The Second Amended Judgment provides significant relief to protect the

28  safety and physical and mental health of pretrial detainees held in one of the largest jail

1  systems in the United States, and the hours reasonably expended on the litigation are

2  commensurate with the significance of the overall relief Plaintiffs obtained.

3          **3.  Compliance with § 1997e(d) Conditions**

4          Plaintiffs may receive an award of attorneys' fees under § 1997e(d)(1) for fees

5  directly and reasonably incurred in either proving a violation of Plaintiffs' rights or

6  enforcing relief ordered for a violation in an amount that is proportional to the relief

7  ordered for the violation.   Plaintiffs' efforts to prolong the efficacy of the Amended

8  Judgment by defending against Defendants' motion to terminate it was time spent

9  "enforcing" that decree and is fully compensable.  *See Cody v. Hillard*, 304 F.3d 767, 777

10  (8th Cir. 2002).  Moreover, Plaintiffs not only successfully defended against termination

11  of most of the disputed areas of relief, they also proved numerous current and ongoing

12  violations of their rights.  As found above, the amount of attorneys' fees requested is

13  proportional to the relief ordered for the violation.

14          The Court finds that the corrected amount requested for reimbursement of

15  attorneys' fees, $1,239,491.63, was directly and reasonably incurred in proving an actual

16  violation of Plaintiffs' rights or in enforcing the relief ordered for a violation.

17          **D.  Fees Incurred Before Appointment as Class Counsel**

18          Defendants contend that Plaintiffs are not entitled to attorneys' fees and non-

19  taxable costs prior to their appointment as class counsel on April 1, 2008.  The PLRA

20  does not require appointment as class counsel for award of attorneys' fees and non-

21  taxable costs.  *See* 42 U.S.C. § 1997e.

22          In April 2008 the Court addressed this issue when Defendants moved for

23  reconsideration of the appointment of counsel for the Plaintiff class.  (Doc. ##1231,

24  1239.)  In 1998 Plaintiffs and Defendants had stipulated to the appointment of Theodore

25  C. Jarvi to represent the Plaintiff class for consent decree termination issues under

26  18 U.S.C. § 3626(b) of the PLRA.  Under the stipulation, the County agreed to pay

27  Jarvi's reasonable fees at the rate of $150 per hour and to pay Jarvi for the assistance of

28

paralegals at $65 per hour and other attorneys at their actual rates, not to exceed $150 per hour.  The stipulation also provided:

> Mr. Jarvi may utilize his own staff or retain contract attorneys or paralegals to assist him in the representation; provided, however, the County shall have no obligation to compensate (and no obligation to reimburse Mr. Jarvi for compensation of) any attorney, paralegal or law firm that is, becomes or has been involved in any other prisoner rights, prison conditions or similar cases involving the County and/or the MCSO.

On April 1, 2008, Judge Carroll terminated Jarvi's appointment as Plaintiff class counsel and granted the motion for appointment of attorney Debra Hill of Osborn Maledon, P.A., and attorney Margaret Winter of the ACLU National Prison Project as class counsel.  (Doc. #1221.)  Judge Carroll further ordered that Hill and Winter "may request reimbursement of fees pending further Order of the Court at an hourly rate no greater than that set by the Prison Litigation Reform Act (150% of the prevailing CJA rate at the time the work is done)."  (*Id.*)

On April 8, 2008, Defendants moved for reconsideration of the order appointing new class counsel.  (Doc. #1231.)  Defendants urged the Court to "determine now rather than later that Defendants should not be responsible for any attorneys' fees and costs, if at all, that were incurred by Hill and Winter (and Winter's predecessor, David Fathi) prior to the time of their appointment" and "reconsider whether Hill and Winter should be compensated under the PLRA or the same fee structure obtained by Ted Jarvi."  (*Id.*)  On April 10, 2008, the case was assigned to this judge.  The April 17, 2008 order ruling on Defendants' motion for reconsideration states in part:

> Defendants object to compensating Ms. Hill and Ms. Winter under the Prison Litigation Reform Act ("PLRA") and contend it is unclear when Ms. Hill and Ms. Winter would be compensated.  However, Fed. R. Civ. P. 23(h) provides, "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Absent an agreement between parties regarding compensation for Ms. Hill and Ms. Winter, any attorneys' fee award will be made as authorized by law.  Under Rule 23(h) and in the context of the January 24, 2008 hearing (doc. #1208) before Judge Earl H. Carroll regarding the appointment of Plaintiffs' class counsel and papers the parties have filed, the April 1, 2008 Order means that Ms. Hill's and Ms. Winter's compensation will be determined under the governing statutory authority, *i.e.*, 18 U.S.C. § 3626 and 42 U.S.C. §§ 1997(e), 1983, 1988, unless the parties reach a different agreement.  Under § 1988, the court may award a

> reasonable attorney's fee to the prevailing party. Under § 1997e, the court may not award fees except to the extent the fee was directly and reasonably incurred in proving an actual violation of Plaintiffs' rights protected by a statute pursuant to which a fee may be awarded under § 1988 and the fee was directly and reasonably incurred in enforcing the relief ordered for the violation. Section 1997e also limits the hourly rate to 150 percent of the hourly rate established for payment of court-appointed criminal defense counsel.

(Doc. #1239.)

The agreement between the County and Jarvi that the County would pay Jarvi, but would not pay associated counsel who had "been involved in any other prisoner rights, prison conditions or similar cases involving the County and/or the MCSO," does not bind the Court, Plaintiffs, or Plaintiffs' current counsel. Neither the agreement nor the date on which Plaintiffs' counsel were appointed as class counsel limits award of attorneys' fees and non-taxable costs under §§ 1988 and 1997e(d).

## D. Fees Requested by the Arizona Chapter of the ACLU

Defendants contend that fees incurred by the Arizona Chapter of the ACLU should be excluded from the award because the Arizona Chapter of the ACLU was not appointed as Plaintiffs' class counsel. As stated above, appointment as class counsel is not a prerequisite to award of attorneys' fees under §§ 1988 and 1997e(d).

## E. Hourly Rates for Paralegals and Law Clerks Under the PLRA

Section 1997e(d)(3) establishes a maximum hourly rate for attorneys' fees. Defendants incorrectly view the statute as establishing a discount, rather than a maximum. They urge the Court to calculate the discounts the PLRA imposes on the lead attorneys in this case, whose customary hourly rates exceed the PLRA maximum, and apply those discounts to the hourly rates for their paralegals and law clerks. Following that reasoning, Defendants contend that the rates for paralegals and law clerks employed by Osborn Maledon should be discounted to 45% of their customary rates and those employed by the ACLU should be discounted to 26% of their customary rates. The PLRA limits fee awards to fees "reasonably incurred" and the amount of a fee award to that which is "proportionately related to the court ordered relief," but it does not provide

1    any basis for arbitrarily discounting fees incurred by paralegals and law clerks based on

2    the effect of the PLRA maximum on the lead attorneys' hourly rates.

3        **F.   Non-taxable Costs**

4            Defendants object to Plaintiffs' requested non-taxable costs in the following

5    categories:  CD duplication charge, DVD duplication charges, color print charges,

6    photocopying charges, collect jail calls, delivery charges, federal express delivery

7    charges, computerized legal research, and individual hard costs.  Defendants contend the

8    amounts requested are unreasonable and that some of the expenses were unnecessary.

9            Plaintiffs reduced their request to adjust for charges improperly included in their

10   initial request for individual hard costs, including expert witness expenses.  Plaintiffs

11   have submitted affidavits and documentation to support all of their non-taxable costs.

12   The Court requested additional information regarding the charges for computerized

13   research and is satisfied that the amount sought is a close approximation of the cost

14   actually incurred by Osborn Maledon.

15           The Court finds that the corrected amount requested for reimbursement of non-

16   taxable costs, $123,221.77, was directly and reasonably incurred in proving an action

17   violation of Plaintiffs' rights or in enforcing the relief ordered for a violation.

18       **G.   Clerical Errors**

19           Defendants identified in Plaintiffs' request for attorneys' fees and non-taxable

20   costs several clerical errors, some of which were substantial.  In their Reply, Plaintiffs

21   reduced the amounts requested accordingly.  During oral argument, Plaintiffs' counsel

22   avowed they had scrutinized their itemized billing statements and were confident of the

23   accuracy of their revised request.  Defendants do not dispute this avowal.

24       **H.   Interest**

25           Plaintiffs initially sought award of interest on the award of attorneys' fees and non-

26   taxable costs pursuant to 28 U.S.C. § 1961(a) from October 28, 2008, the date they filed

27   their motion for award of attorneys' fees.  In their Reply Brief they sought award of

28   interest from October 22, 2008, which they described as "the date of the order

1  establishing their entitlement to the award."  Defendants contend that interest awarded

2  under § 1961(a) does not begin to accrue until either the Court orders a fee award or

3  Defendants stipulate to one.

4          Section 1961(a) provides, "[I]nterest shall be allowed on any money judgment in a

5  civil case recovered in a district court" and "shall be calculated from the date of the entry

6  of the judgment."  Although there is no consensus among the Courts of Appeals that have

7  addressed the issue, the Fifth, Eighth, Ninth, Eleventh and Federal Circuits have adopted

8  the view that "post-judgment interest on an attorneys' fee award runs from the date that

9  the district court enters a judgment finding that the prevailing party is entitled to such an

10  award, or from the date that, by operation of law, the prevailing party becomes entitled to

11  fees, even if the amount of the award is not fixed in that judgment."  *Eaves v. County of*

12  *Cape May*, 239 F.3d 527, 531 (3d Cir. 2001).

13          In *Friend v. Kolodzieczak*, the Ninth Circuit stated:

14          Interest runs from the date the entitlement to fees is secured, rather than
            from the date that the exact quantity of fees is set.  *Finkelstein v. Bergna*,
15          804 F. Supp. 125, 1239-40 (N.D. Cal. 1992); *see also Perkins v. Standard
            Oil Co.*, 487 F.2d 672, 674-76 (9th Cir. 1973) (post-judgment interest runs
16          from date attorneys' fees are first awarded even though the fee award is
            later reduced on appeal).

17  72 F.3d 1386, 1391-92 (9th Cir. 1995) (en banc) (awarding fees under § 1988).  In *Friend*,

18  the Ninth Circuit identified "the date on which the entitlement to fees was secured" as the

19  date the Ninth Circuit entered an order for a specified amount of fees and costs related to

20  the litigation on the merits and awarded an unspecified amount of fees and costs related to

21  the fee award litigation.  *Id.* at 1392.  The Ninth Circuit explained that interest would run

22  on both components of the fee award from the date of the order for fees and costs related

23  to the merits litigation, even though the second portion was not fixed until twenty days

24  later, because plaintiffs' entitlement to fees was secured by the order awarding fees on the

25  merits litigation.  *Id.*

26          In support of its declaration that "[i]nterest runs from the date the entitlement to

27  fees is secured," the Ninth Circuit cited *Finkelstein v. Bergna*, 804 F. Supp. 125, 1239-40

28

1    (N.D. Cal. 1992).  In *Finkelstein*, the district court awarded interest on fees from the date

2    of an initial judgment finding the plaintiff was entitled to recover reasonable attorneys'

3    fees and costs under § 1988 and referring the determination of those fees and costs to a

4    magistrate judge.  *Id.* at 1237, 1239-40.  The district court relied on *Jenkins by Agyei v.*

5    *Missouri*, 931 F.2d 1273 (8th Cir. 1991), which affirmed interest on a fee award under

6    § 1988 from "the date the court recognizes the right to such fees in a judgment."  *Id.* at

7    1277.  *Jenkins* applied the Fifth Circuit's test from *Copper Liquor, Inc. v. Adolph Coors*

8    *Co.*, 701 F.2d 542 (5th Cir. 1983), summarized as:  "interest accrues from the date that the

9    party becomes unconditionally entitled to fees, even if those fees are not yet quantified."

10   931 F.2d at 1276; *see Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482,

11   492, 495 (6th Cir. 2001) (interest on a fee award runs from the date of entry of the

12   judgment that unconditionally entitles the prevailing party to reasonable attorneys' fees,

13   albeit unquantified).  *But see MidAmerica Federal Sav. & Loan Ass'n v.*

14   *Shearson/American Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992) (rejecting *Copper*

15   *Liquor* and holding postjudgment interest began to accrue "the date fees were

16   meaningfully ascertained and included in a final, appealable judgment"); *Eaves*, 239 F.3d

17   at 531-32 (adopting minority view that "where the district court enters an order stating

18   that the prevailing party is entitled to a fee award but does not quantify the amount of the

19   award until a later date, post-judgment interest does not accrue until the Court fixes the

20   amount of the award").

21        Applying the Ninth Circuit rule and the majority rule to this case requires

22   understanding the real procedural character of Plaintiffs' request for attorney fees.  This

23   Court made extensive findings of fact and conclusions of law for the benefit of the

24   parties, any reviewing court, and the public.  For the convenience of all, the provisions of

25   the 1995 Amended Judgment that remain in effect, as originally drawn or as modified,

26   were restated in a Second Amended Judgment.  These artifacts of the process may give an

27   impression that this was a prosecution of a new claim, requiring a separate judgment

28   document to fix an entitlement to fees.  In truth, this was a motion, one to lift the 1995

1   consent Amended Judgment, not a new action.  As a motion, it was decided when the

2   Court ruled on it.  As a post-judgment motion, it was final and appealable upon entry.  28

3   U.S.C. § 1291; *see Hilao v. Estate of Marcos*, 103 F.3d 762, 764 (9th Cir. 1996).  Nothing

4   in the separate order restating the modified Amended Judgment as a Second Amended

5   Judgment (doc. # 1635) needed to address entitlement to attorney fees.  The findings of

6   fact, conclusions of law, and order determined Plaintiffs' entitlement to attorney fees,

7   subject to quantifying the amount, in the same sense as a judgment in a fresh action so

8   providing but leaving quantification to future proceedings.   October 22, 2008, is "the

9   date the entitlement to fees is secured," *Friend v. Kolodzieczak*, 72 F.3d at 1391, in this

10  atypical procedural context.  Therefore, Plaintiffs are entitled to interest on the fee award

11  from that day.

12          **IV. Conclusion**

13          Under 42 U.S.C. §§ 1988 and 1997e(d), Plaintiffs are entitled to award of

14  attorneys' fees in the amount of **$1,239,491.63** and non-taxable costs in the amount of

15  **$123,221.77**.  Plaintiffs are entitled to interest on this award at the federal judgment rate

16  that will accrue from October 22, 2008.

17          IT IS THEREFORE ORDERED that Plaintiffs' Motion for Attorneys' Fees and

18  Non-taxable Costs (doc. #1640) is granted in the amount of **$1,239,491.63** and non-

19  taxable costs in the amount of **$123,221.77**.  Additional fees and expenses accrued since

20  December 5, 2008, may be claimed by May 6, 2009.  Defendants may file a response

21  within the time permitted by LRCiv 7.2(c).  No reply may be filed unless invited by the

22  Court.  The Court will then direct entry of judgment in the total amount awarded, with

23  interest from October 22, 2008.

24          DATED this 20th day of April, 2009.

25

26  _____

27                  Neil V. Wake
                United States District Judge

28