**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fred Graves, Isaac Popoca, on their own behalf and on behalf of a class of all pretrial detainees in the Maricopa County Jails,<br><br>Plaintiffs,<br><br>v.<br><br>Joseph Arpaio, Sheriff of Maricopa County; Andrew Kunasek, Mary Rose Wilcox, Denny Barney, Steve Chucri, and Clint L. Hickman, Maricopa County Supervisors,<br><br>Defendants. | No. CV-77-00479-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiffs' Motion for Reconsideration (Doc. 2287) of five remedial provisions of the Fourth Amended Judgment (Doc. 2284). Having considered briefing by both sides, the Court will revise one paragraph of the Fourth Amended Judgment. The deadlines imposed by the Fourth Amended Judgment are not changed.

**1.     Timely Provider Assessments of Seriously Ill Detainees at Intake (¶ 5(a)(2))**

Paragraph 5(a)(2) of the Fourth Amended Judgment states:

> If the receiving screening indicates a pretrial detainee is suffering from a serious acute or chronic health condition, a physician, physician assistant, or nurse practitioner will conduct a face-to-face examination of the pretrial detainee within 24 hours after the receiving screening.

Plaintiffs request that paragraph 5(a)(2) be modified as shown in italics:

> If the receiving screening indicates a pretrial detainee is suffering from a serious acute or chronic health condition, a physician, physician assistant,

or nurse practitioner will conduct a face-to-face examination of the pretrial detainee *on an emergency or urgent basis, no longer than* within 24 hours after the receiving screening.

The Court found that Defendants had not met their burden of proving that "as of August 9, 2013, pretrial detainees who presented with serious medical health needs at intake consistently were timely seen face-to-face by a medical provider." (Doc. 2283, ¶ 40.) The Court also found, "When the receiving screening identifies a pretrial detainee as having a serious acute or chronic medical condition, in most cases the pretrial detainee should be seen by a medical provider on an emergency or urgent basis, no later than within 24 hours." (*Id.*, ¶ 31.)

Plaintiffs' primary criticism has been that pretrial detainees who need to be seen by a provider often are not seen *face-to-face* by a *provider* quickly enough to provide timely diagnosis and/or treatment. As currently worded, paragraph 5(a)(2) requires Defendants to prove that these pretrial detainees are actually *seen* by a *provider* with an outer limit of 24 hours. This requires that Defendants have a sufficient number of qualified providers available to actually *see* pretrial detainees within 24 hours, which often will occur while the pretrial detainees are in the intake center before they are transported to a housing unit. Adding the phrase "on an emergency or urgent basis" does not ensure that a pretrial detainee who needs to be seen by a medical provider within minutes will be seen within minutes, not hours.

### 2. Tuberculosis Screening (¶ 5(a)(7))

Paragraph 5(a)(7) of the Fourth Amended Judgment states:

> Pretrial detainees will be tested for tuberculosis within 14 days after the receiving screening unless they have been tested with negative results within the past year.

Plaintiffs request that paragraph 5(a)(7) be replaced with the following provision:

> *At the time of the receiving screening, pretrial detainees will be screened for tuberculosis using tuberculin skin testing, interferon-gamma release assays, chest x-ray, or other acceptable method.*

The Court found that "Defendants have not shown that as of August 9, 2013, the receiving screening resulted in the timely identification, segregation, and treatment of pretrial detainees with TB." (Doc. 2283, ¶ 73.) The Court did not find that the current tuberculosis screening program was unconstitutional, but rather that Defendants did not satisfy their burden of proof to show that there is no current and ongoing constitutional violation regarding identification, segregation, and treatment of pretrial detainees with communicable diseases.

Plaintiffs contend that paragraph 5(a)(7) "permits a slackening" of Defendants' current practices. Defendants' policy as of August 9, 2013, required routine tuberculin skin testing within 10–14 days after intake for pretrial detainees who were not identified during the receiving screening as being at risk for tuberculosis. There is no practical difference between ordering Defendants to do it within 10–14 days and ordering them to do it within 14 days—the maximum time permitted is the same. Previously, however, Defendants conducted routine tuberculin skin testing only in conjunction with an initial health assessment, and they did not provide an initial health assessment for all pretrial detainees. Moreover, routine tuberculin skin tests were suspended for a period because of a shortage of testing material. Some pretrial detainees, therefore, never were tested for tuberculosis. In contrast, paragraph 5(a)(7) requires tuberculosis testing for every pretrial detainee except for those who have been tested with negative results within the past year.

To justify tuberculosis screening during intake rather than within seven days as recommended by the CDC, Plaintiffs rely on Dr. Cohen's opinion, which is based on statistics regarding the proportion of Arizona's tuberculosis cases found in jails and prisons, which do not distinguish jails from prisons. Unlike in prisons, in the Maricopa County Jail approximately 40% of inmates are released within 24 hours of booking, 50% within 2 days of booking, 65% within 7 days of booking, and 75% within 14 days of booking. Tuberculin skin testing includes both an injection and a subsequent assessment of any reaction 48–72 hours after the injection. If pretrial detainees receive skin testing during the receiving screening, more than half likely will be released before the skin test

reaction can be read. Therefore, requiring tuberculin skin testing during the receiving screening for pretrial detainees who are not at risk for tuberculosis likely would have minimal benefit.

### 3. Laboratory and Radiology Services (¶ 5(a)(12))

Paragraph 5(a)(12) of the Fourth Amended Judgment states:

> When a physician, physician assistant, or nurse practitioner orders a lab test or radiological study, the physician, physician assistant, or nurse practitioner will identify the urgency with which the test or study must be performed, *e.g.*, within 24 hours, 72 hours, or 7–10 days, and the urgency with which the results of the test or study must be returned. The test or study will be performed within the timeframe ordered by a physician, physician assistant, or nurse practitioner.

Plaintiffs request that the following sentence be added to the end of paragraph 5(a)(12):

> *Providers will review laboratory and radiology results on a timely basis and document their review in the medical record.*

Requiring providers to review all tests and studies "on a timely basis" does not set enforceable time limits. Further, it is extremely unlikely that a medical provider would identify a laboratory test or radiological study as urgent, order that it be completed and results returned within a short time, and then fail to review the results promptly. The purpose of paragraph 5(a)(12) is to empower medical providers to obtain the information they need as quickly as needed based on their professional judgment so that they can provide pretrial detainees ready access to necessary medical care.

### 4. Care for Patients Withdrawing from Drugs or Alcohol (¶ 5(a)(13))

Paragraph 5(a)(13) of the Fourth Amended Judgment states:

> Pretrial detainees identified during the receiving screening as being at risk of serious harm from alcohol or drug withdrawal will be assessed by a registered nurse twice a day for at least seven days regardless of whether they are assigned to a housing unit designated for withdrawing inmates or their classification status. The nurse will document each assessment and identify the urgency with which the pretrial detainee should be seen by a physician, physician assistant, or nurse practitioner. If a pretrial detainee is not seen face-to-face by a physician, physician assistant, or nurse

- 4 -

   practitioner within the timeframe recommended by the nurse, the reason
   will be documented in the pretrial detainee's medical record.

Plaintiffs request that the following language be added to the beginning of paragraph 5(a)(13):

> *Pretrial detainees identified during the receiving screening as being at risk of serious harm from alcohol or drug withdrawal will have a timely face-to-face assessment by a provider who will develop and initiate a plan of care that includes clinically appropriate monitoring and treatment and placement in clinically appropriate housing. At a minimum, . . . .*

   As currently stated, paragraph 5(a)(13) requires that *all* pretrial detainees identified during the receiving screening as being at risk of serious harm from alcohol or drug withdrawal are assessed twice a day by a registered nurse, not just those placed in the Durango withdrawal unit. That means that pretrial detainees who are female, classified as a security risk, and/or placed in the infirmary, the Mental Health Unit, general population, or anywhere else must be assessed twice a day by a registered nurse. For those with acute, serious chronic, or complex multisystem medical conditions, such as withdrawal plus cardiac risk factors, paragraph 5(a)(2) requires that a medical provider conduct a face-to-face examination within 24 hours after the receiving screening, and paragraph 5(a)(8) requires that a pretrial detainee be evaluated face-to-face by a medical provider and receive an initial health assessment within 24 hours after the receiving screening. Paragraph 5(a)(9) requires that a medical provider develop plans for treatment and monitoring of pretrial detainees with serious medical conditions, which necessarily requires providers to develop and initiate a plan of care for pretrial detainees withdrawing from drugs or alcohol. Treatment necessarily includes ordering placement in clinically appropriate housing.

   Moreover, some withdrawing pretrial detainees do not need to be seen immediately by a medical provider, and a registered nurse is qualified to triage the needs. Requiring medical records to document the registered nurse's assessment of urgency and the date and time when a medical provider actually saw the pretrial detainee face-to-face

will not only hold Defendants accountable, but also it will enable them to identify and correct any communication and delivery of service deficiencies.

### 5. Mental Health Provider Assessments Following a Referral (¶ 5(a)(15))

Paragraph 5(a)(15) of the Fourth Amended Judgment states:

> Pretrial detainees with a mental health condition identified as urgent by detention, intake, medical, or mental health staff will be seen face-to-face by a mental health provider within 24 hours of the identification.

Plaintiffs propose the following revision of paragraph 5(a)(15):

> Pretrial detainees *seen by detention, intake, medical, or mental health staff* with *emergent* mental health *needs, which include but are not limited to those displaying active symptoms of mental illness, will be referred to and* seen face-to-face by a mental health provider *on an urgent or emergent basis, and no later than* within 24 hours of the identification.

Paragraph 5(a)(15) is not intended to require detention, medical, and low-level mental health staff to decide whether a pretrial detainee's mental health needs are urgent. It would therefore be helpful to phrase this provision in more objective, behavioral terms. However, this paragraph is not intended to order staff to make referrals. The evidence presented to the Court showed that various types of staff often refer pretrial detainees whose behavior indicates deteriorating mental health. The purpose of this provision is to give greater priority to staff referrals than to mental health Health Needs Requests. Referrals will require face-to-face evaluation by a mental health provider within 24 hours whereas mental health Health Needs Requests are addressed by mental health staff within 48 hours.

The Court cannot meaningfully evaluate whether Defendants have done something "as soon as possible." In practical effect, ordering Defendants to do something "as soon as possible, but in no more than 24 hours" is the same as ordering them to do it within 24 hours.

Paragraph 5(a)(15) of the Fourth Amended Judgment will be replaced with the following provision:

> Upon referral by detention, intake, medical, or mental health staff, pretrial detainees who display active symptoms of mental illness or otherwise demonstrate an emergent mental health need will be seen face-to-face by a mental health provider within 24 hours of the referral.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Reconsideration (Doc. 2287) is granted in part.

IT IS FURTHER ORDERED that the Revised Fourth Amended Judgment (Doc. 2299) filed concurrently with this Order shall supersede the Fourth Amended Judgment (Doc. 2284) and have continuing effect.

Dated this 10th day of December, 2014.

_____
Neil V. Wake
United States District Judge