1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8
    Fred Graves, Isaac Popoca, on their own        No. CV-77-00479-PHX-NVW
9   behalf and on behalf of a class of all pretrial
    detainees in the Maricopa County Jails,
10                                                   **ORDER**
                        Plaintiffs,
11
12  v.

13  Paul Penzone, Sheriff of Maricopa County;
    Bill Gates, Steve Gallardo, Jack Sellers,
14  Steve Chucri, and Clint L. Hickman,
    Maricopa County Supervisors,
15
                        Defendants.
16

17         On May 20, 2019, the Court ordered Defendants to "demonstrate that before a

18  seriously mentally ill pretrial detainee is placed in disciplinary isolation, CHS mental health

19  staff are consulted and their recommendations addressing the potential effects of isolation

20  the pretrial detainee's mental health are received and considered." (Doc. 2500 at 3.) The

21  Order stated, "Defendants are not required to prove compliance with each term of their

22  adopted policies and procedures, but must produce objective proof that mental health staff

23  are consulted and such consultation reaches disciplinary decision-makers, at least as a

24  general matter, before disciplinary isolation is imposed." (*Id.* at 2.) Before the Court are

25  Defendants' report of compliance with the May 20, 2019 Order, Plaintiffs' response, and

26  Defendants' reply. (Docs. 2519, 2520, 2523.)[1]

27  _____

28        [1] "CHS" means "Correctional Health Services." "MCSO" means Maricopa County
    Sheriff's Office. "DAR" means Disciplinary Action Report. "SMI" means Seriously

Also before the Court are Plaintiffs' Motion to Modify the Revised Fourth Amended Judgment Under Federal Rule of Civil Procedure 60(b)(5) and for Further Relief (Doc. 2521) and Plaintiffs' Motion for Schedule of Presentation of Evidence of Current Conditions (Doc. 2522).

## I. BACKGROUND

Pretrial detainees held in the Maricopa County Jails brought this class action in 1977 against the Maricopa County Sheriff and the Maricopa County Board of Supervisors seeking injunctive relief for alleged violations of their civil rights. In 1981, the parties entered into a consent decree that addressed and regulated aspects of the County jail operations as they applied to pretrial detainees. In 1995, upon stipulation of the parties, the 1981 consent decree was superseded by the Amended Judgment. The stipulated Amended Judgment expressly did not represent a judicial determination of any constitutionally mandated standards applicable to the Maricopa County Jails.

In November 2003, Defendants renewed a prior motion to terminate the Amended Judgment, an evidentiary hearing was initiated, and the parties engaged in further discovery, but the motion was not decided. On April 3, 2008, the case was assigned to the undersigned judge. On April 25, 2008, Defendants' motion to terminate the Amended Judgment was set for evidentiary hearing commencing August 12, 2008. In August and September 2008, a thirteen-day evidentiary hearing was held to decide whether prospective relief in the Amended Judgment should be continued, modified, or terminated. On October 22, 2008, the Court made detailed findings of fact and conclusions of law and entered the Second Amended Judgment. Certain provisions of the Amended Judgment were found to remain necessary to correct a current and ongoing violation of a federal right, to extend no further than necessary to correct the violation of the federal right, to be narrowly drawn,

Mentally Ill, as identified by the county public mental health provider. "MHCC" means Mental Health Chronic Care, as identified by CHS. References to "seriously mentally ill" individuals include both those designated SMI by the county public mental health provider and those identified by CHS as having serious mental illness.

- 2 -

and to be the least intrusive means to correct the violation.  Other provisions were modified or vacated based on the evidence presented.  The provisions remaining in effect, as originally written or as modified, were restated in the Second Amended Judgment.

In addition, on October 22, 2008, the Court ordered the parties to confer immediately regarding prompt compliance and to submit status reports.  A status conference was held on December 5, 2008.  On January 9, 2009, a hearing was held regarding Defendants' progress toward compliance with the nonmedical portions of the Second Amended Judgment.  On January 28, 2009, upon stipulation of the parties, the Court appointed a medical expert and a mental health expert to serve as independent evaluators of Defendants' compliance with the medical and mental health provisions of the Second Amended Judgment.  In June 2009, the Court began receiving quarterly reports from the experts.  By April 2010, the Court concluded that "significant areas of failure to comply with the Second Amended Judgment's medical and mental health requirements remain" and ordered the parties to jointly "develop a proposed procedure for achieving and demonstrating Defendants' complete compliance with the Second Amended Judgment." (Doc. 1880 at 3–4.)  In the April 7, 2010 Order, the Court stated:  "The Court's purpose is to set a procedure by which full compliance with the Second Amended Judgment is either confirmed or specific implementing remedies are ordered and complied with by the end of this calendar year."  (*Id.* at 4.)

In January 2011, the parties reported Defendants' disagreement with two of the independent evaluators' recommendations, but in June 2011 the parties jointly reported that an evidentiary hearing regarding medical and mental health remedies was not necessary.  On June 7, 2011, Defendants filed a motion to terminate the nonmedical provisions of the Second Amended Judgment.  On October 12, 2011, the parties stipulated that certain nonmedical provisions should be terminated and others should remain in effect without an evidentiary hearing.  The stipulation stated that Defendants would renew the motion to terminate the remaining nonmedical provisions after April 1, 2012, and that

Plaintiffs would not contest the renewed motion if Defendants successfully accomplished certain goals for the period November 1, 2011, through March 1, 2012.

On April 24, 2012, Defendants moved to terminate the remaining nonmedical provisions of the Second Amended Judgment, and Plaintiffs did not oppose the motion. On May 24, 2012, Defendants' motion was granted, and those provisions of the Second Amended Judgment that remained in effect were restated in the Third Amended Judgment.

In October 2012, the independent evaluators visited the jails, conducted interviews, and reviewed medical records. In January 2013, the evaluators reported that Defendants had made significant progress toward compliance with the Third Amended Judgment, and the evaluators provided specific recommendations for achieving substantial compliance. In June 2013, Defendants filed a status report describing their efforts to address the evaluators' concerns and identified certain recommendations with which they disagreed. In response, Plaintiffs identified recommendations for which Defendants had not shown evidence of compliance and also challenged the accuracy of some of Defendants' assertions about their compliance with the evaluators' recommendations.

On August 9, 2013, Defendants moved to terminate the Third Amended Judgment. The Court ordered that for evidence to be relevant to the motion, it must tend to show whether any current and ongoing constitutional violation existed on August 9, 2013. In addition to filing briefs and statements of facts with supporting exhibits, the parties presented evidence and argument for six days in February and March 2014.

On September 30, 2014, the Court made detailed findings of fact and conclusions of law regarding whether and to what extent prospective relief in the Third Amended Judgment should be terminated. In many instances, Defendants demonstrated they had recently adopted or revised policies and procedures designed to correct deficiencies identified by the independent evaluators and/or Plaintiffs, but they were unable to produce evidence that the revised policies and procedures had been fully and consistently implemented or that the identified systemic deficiencies had been corrected. Because

Defendants did not prove compliance with any of the three substantive paragraphs of the Third Amended Judgment, *i.e.*, sufficient screening at intake, ready access to care for serious medical and mental health needs, and continuity of prescription medications, the Court found that the prospective relief ordered in those three paragraphs remained necessary to correct current and ongoing constitutional violations.

Also on September 30, 2014, after six years of reviewing evidence, expert opinion, and legal argument regarding conditions in the Maricopa County Jails, and after allowing both parties opportunity to propose remedies to correct constitutional deficiencies, the Court ordered remedies that did not exactly track constitutional standards but were practical, concrete measures necessary to correct constitutional violations. Defendants were ordered to, within 60 days, adopt new policies or amend existing policies regarding 31 specific requirements for providing medical and mental health care, implement the policies within 150 days, collect and summarize compliance data for a period of 180 days after implementation of the policies, and report documentation showing completion of each stage. The Court stated, "If Defendants comply with this Order and its deadlines, within one year they will demonstrate that prospective relief no longer remains necessary to correct any current and ongoing violation of Plaintiffs' constitutional rights, and Court-ordered relief may be terminated before the [Prison Litigation Reform Act ("PLRA")] permits another motion to terminate." (Doc. 2283 at 59-60.)

Therefore, Paragraphs 2, 3, and 4 of the Revised Fourth Amended Judgment[2] continued the prospective relief in the Third Amended Judgment, and Paragraph 5 of the Revised Fourth Amended Judgment defined specifically how Defendants would prove their compliance with Paragraphs 2, 3, and 4. Paragraph 5(a) identified the 31 specific requirements for providing medical and mental health care that were expected to become institutionalized through appropriate policies, staffing, training, and monitoring.

---

[2] The Fourth Amended Judgment was entered on September 30, 2014, and was superseded by the Revised Fourth Amended Judgment on December 10, 2014.

In January 2015, the Court clarified that Plaintiffs' counsel were permitted to tour the jail facilities, speak with pretrial detainees and staff, review records on-site, and review copies of records off-site upon reasonable request. It further stated that the Revised Fourth Amended Judgment "requires Defendants to meet a series of deadlines and anticipates that Plaintiffs will promptly bring to the Court's attention any perceived lack of compliance with each requirement." (Doc. 2309.)

In September 2015, Defendants reported the data they had collected and summarized pursuant to the Revised Fourth Amended Judgment. On October 15, 2015, the Court granted Plaintiffs' request that they be permitted to file their response to Defendants' compliance reports by January 15, 2016. The Court further ordered that Plaintiffs' response address only whether Defendants had demonstrated compliance with Paragraph 5 of the Revised Fourth Amended Judgment related to each of the 31 subparagraphs of Paragraph 5(a). Plaintiffs moved for reconsideration of that order, requesting opportunity for Plaintiffs and their experts to review individual medical records off-site and to conduct a site visit at the jail to review medical records. The Court granted Plaintiffs' motion for reconsideration to the extent that Plaintiffs' counsel and their medical experts were permitted to review individual medical records on-site within certain limitations, Defendants were permitted to produce paper copies of some of the requested records, and Plaintiffs' time to respond to Defendants' compliance reports was extended to February 26, 2016. The Court further ordered that Plaintiffs' records review would focus on the accuracy of Defendants' compliance reports and the significance of any lack of compliance. The Court explained:

> To clarify, at this stage of the litigation, the question is not whether the remedies ordered have in fact resolved the previously found systemic deficiencies, but whether the remedies have been implemented consistently enough. What is "enough" is context-specific. The Court has already determined that adequate compliance with the specific standards previously stated will meet minimum constitutional standards. The Court will not go behind those determinations in the current proceedings, and Plaintiffs will not be granted discovery to attempt to argue and prove some other measure

of constitutional requirements.  This case has always been about systemic failures amounting to constitutional violations.  Proof of some individual failures does not establish systemic constitutional failures, and discovery regarding mere individual failures is not warranted.

. . . .

In its September 30, 2014 Findings of Fact and Conclusions of Law, the Court explained that because Defendants had not shown they had resolved certain systemic deficiencies after six years, it was necessary for the Court to craft remedies to correct constitutional violations.  (Doc. 2283 at 6.)  After giving Plaintiffs and Defendants opportunity to propose and debate specific remedies, the Court ordered "remedies that do not exactly track constitutional standards but that are practical measures necessary to correct constitutional violations." (*Id.* at 59.)  Each remedy was intentionally written to provide a clear standard by which compliance could be decided even though the Eighth and Fourteenth Amendments do not demand a particular action.  Therefore, the Court will evaluate Defendants' compliance with the 31 subparagraphs of Paragraph 5(a) of the Revised Fourth Amended Judgment exactly as they are written.

. . . .

However, Plaintiffs are not required to accept as true Defendants' assertions about their compliance.  They are entitled to examine how data were collected, whether the reported data were relevant to the ordered remedy, and whether the data show sufficient compliance.

(Doc. 2352.)

Plaintiffs' time to respond to Defendants' compliance reports was further extended to April 1, 2016.  In addition to filing a response, Plaintiffs also filed a motion requesting the Court to order additional specific relief regarding Paragraph 3 of the Revised Fourth Amended Judgment.  Subsequently, Plaintiffs moved for an evidentiary hearing to resolve factual disputes related to Paragraph 5 and their motion to enforce Paragraph 3.

On March 1, 2017, the Court found that Defendants had demonstrated compliance with 21 of the 31 specific requirements and had not yet demonstrated compliance with the 10 remaining requirements.  (Doc. 2404.)  The Court ordered Defendants to collect and summarize data for the months of April, May, and June 2017 that showed the extent to which Defendants had complied with the 10 remaining requirements.  The Court ordered

the parties to meet and confer regarding Defendants' plan for demonstrating compliance. The Court further ordered that Plaintiffs' counsel and experts were permitted to tour the Maricopa County Jails, speak with pretrial detainees and staff, and review records related to the 10 remaining requirements.

On March 1, 2017, the Court also denied Plaintiffs' motion requesting another evidentiary hearing because the Second Amended Judgment, the Third Amended Judgment, and the Revised Fourth Amended Judgment were based on detailed evidentiary findings and only after the Court concluded that specific relief extended no further than necessary to correct the violation of the federal right, it was narrowly drawn, and it was the least intrusive means to correct the violation. Specific constitutional deficiencies had been identified, and specific remedies tailored to address those deficiencies had been ordered. In the same March 1, 2017 Order, the Court denied Plaintiffs' motion to enforce the Revised Fourth Amended Judgment, which essentially asked the Court to reconsider its 2014 findings and conclusions regarding termination of the Third Amended Judgment and order additional injunctive relief. (Doc. 2404.)

In July through September 2017, Defendants reported summaries of their compliance data and produced to Plaintiffs the raw data summarized in the compliance reports. In December 2017, Plaintiffs filed a response to Defendants' compliance reports, a motion to enforce the Revised Fourth Amended Judgment and for additional relief, and a motion to re-open discovery and for a scheduling order. In June 2018, oral argument was heard on Defendants' compliance reports and all pending motions, Defendants' were granted leave to supplement their compliance reports regarding 2 of the 10 remaining requirements. Plaintiffs were granted leave to conduct additional discovery, and their time to respond was extended.

On August 22, 2018, the Court found that Defendants had demonstrated compliance with 7 of the 10 remaining requirements, and determination of compliance with 2 of the remaining requirements was pending. (Doc. 2483.) Thus, the final remedy ordered by the

Revised Fourth Amended Judgment to be addressed was subparagraph (26) of Paragraph 5(a) of the Revised Fourth Amended Judgment, which states: "Defendants will adopt and implement a written policy requiring that mental health staff be consulted regarding discipline of any seriously mentally ill pretrial detainee." (Doc. 2299 at 6.) On August 22, 2018, the Court found:

> Defendants have generally shown compliance with subparagraph 5(a)(26), but not for consultation concerning disciplinary isolation. Defendants will be ordered to propose how they will demonstrate that before a seriously mentally ill pretrial detainee is placed in disciplinary isolation, CHS mental health staff are consulted and their recommendations addressing the potential effects of isolation on the pretrial detainee's mental health are received and considered.

(Doc. 2483 at 35.) The Court ordered: "Defendants have demonstrated compliance with subparagraph (26) of Paragraph 5(a) of the Revised Fourth Amended Judgment except to the extent that further evidence is required concerning instances of disciplinary isolation." (*Id.* at 38.) The Court further ordered Defendants to "file a proposed plan for demonstrating compliance with subparagraph (26) of Paragraph 5(a) of the Revised Fourth Amended Judgment concerning instances of disciplinary isolation." (*Id.* at 39.)

In its August 22, 2018 Order, the Court also denied Plaintiffs' motions to enforce the Revised Fourth Amended Judgment and for additional relief and to re-open discovery and for a scheduling order. The Court explained that Plaintiffs essentially sought reconsideration of previous orders and disregarded "the fact that the Court already assessed the existence of constitutional violations; considered the parties' proposed remedies; ordered specific remedies; provided Plaintiffs extensive access to the Jails' records, pretrial detainees, staff, and raw data supporting Defendants' compliance reports; and ordered Plaintiffs to respond to those reports." (*Id.* at 18.)

On January 15, 2019, the Court found that Defendants had demonstrated compliance with subparagraphs (22) and (23) of Paragraph 5(a) of the Revised Fourth Amended Judgment. (Doc. 2493.) On January 15, 2019, the Court rejected Defendants' proposed plan for demonstrating compliance and directed Defendants to:

. . . come up with a process and contemporaneous record keeping that will show for a three-month period: all pretrial detainees for whom a DAR was issued for possible disciplinary isolation, which of them had been designated as seriously mentally ill, whether CHS mental health staff was consulted for each, the content of each consultation or recommendation, and whether disciplinary segregation was imposed or sanctions were suspended. The report should explain how sanctions proposed by MCSO were communicated to CHS, that consultations with CHS mental health staff occurred, and that recommendations by CHS mental health staff were considered by MCSO. The plan and the report pursuant to it should explain how these communications were documented and how the evidence of the communications was collected.

(Doc. 2493 at 8.) The Court reminded the parties that "the purpose of subparagraph 5(a)(26) was to articulate a minimum constitutional measure of disciplinary isolation of seriously mentally ill detainees." (*Id.* at 7.) "Defendants are not required to prove compliance with each term of their adopted policies and procedures, but must produce objective proof that mental health staff are consulted and such consultation reaches disciplinary decision-makers, at least as a general matter, before disciplinary isolation is imposed." (*Id.*)

On May 3, 2019, after exchanging proposed plans and conferring, the parties filed separate proposals for demonstrating compliance. (Docs. 2497, 2498.) Defendants' proposal included sample reports and forms, including the Disciplinary Action Report, MCSO/CHS Disciplinary Correspondence form, and the Consultation/Override Form for Disciplinary Isolation of SMI/MHCC Inmates. (Doc. 2497.) On May 16, 2019, the Court heard oral argument regarding the proposals. (Doc. 2505.) Plaintiffs did not object to the forms proposed by Defendants. (*Id.* at 42-43.) The Court stated that its previous order required only that MCSO receive and consider the comments of CHS mental health staff regarding placing seriously mentally ill pretrial detainees in disciplinary isolation because the Court is limited to ordering the constitutional minimum. (*See id.* at 17, 19-20.)

On May 20, 2019, the Court ordered a compliance plan through which Defendants would "demonstrate that before a seriously mentally ill pretrial detainee is placed in disciplinary isolation, CHS mental health staff are consulted and their recommendations

addressing the potential effects of isolation on the pretrial detainee's mental health are received and considered." (Doc. 2500.) On June 3, 2019, Plaintiffs moved for reconsideration of the May 20, 2019 Order, which the Court granted on June 28, 2019, requiring Defendants to produce (1) a list of pretrial detainees identified as Seriously Mentally Ill or Mental Health Chronic Care during April, May, and June 2019 and (2) a list of all pretrial detainees who were placed in disciplinary isolation during April, May, and June 2019. (Docs. 2501, 2509.)

On July 19, 2019, Defendants filed their compliance report pursuant to the May 20, 2019 Order. (Doc. 2519.) On August 19, 2019, Plaintiffs filed their response. (Doc. 2520.) On August 30, 2019, Defendants filed a reply. (Doc. 2523.)

## II. COMPLIANCE WITH THE MAY 20, 2019 ORDER

### A. Methodology

Defendants reported that the MCSO Hearing Unit first collected all Disciplinary Action Reports that were created in April, May, and June 2019 ("the relevant period") for pretrial detainees designated Seriously Mentally Ill or Mental Health Chronic Care ("the relevant group") and that had a potential sanction of disciplinary restriction or restrictive housing. (Doc. 2519 at 2.) Disciplinary Action Reports include the date, time, and location of the violation, the specific violation(s), a formal statement of the charge, the inmate's signature, and whether the inmate pleads guilty or not guilty. (Doc. 2497-1 at 6.) Disciplinary Action Reports also provide spaces for indicating whether the inmate has been identified as Seriously Mentally Ill/Mental Health Chronic Care, whether CHS has been consulted, whether sanctions have been suspended, the hearing officer's findings, and the number of days of disciplinary restrictive housing or full restriction imposed. (*Id.*)

Second, the MCSO Hearing Unit collected the email communications between CHS mental health staff and MCSO regarding the relevant group for the relevant period. (*Id.*) When a Disciplinary Action Report involves an inmate identified as Seriously Mentally Ill/Mental Health Chronic Care, MCSO sends an email to CHS mental health staff

requesting consultation regarding the possible effects on the inmate's mental health resulting from discipline, including isolation. (Doc. 2497-1 at 5.) The Disciplinary Action Report is attached to the email. On the Disciplinary Correspondence Form CHS mental health staff communicate to MCSO that the inmate's electronic health record has been reviewed, and one of three levels is checked:

> Dis Level 1: EHR reviewed. There are no mental health contraindications to this individual receiving sanctions recommended by MCSO and there are no contraindications to this individual being placed in disciplinary segregation.

> Dis Level 2: EHR reviewed. Symptoms of mental illness may have contributed to this individual's behavior and should be considered in determining sanctions. Due to this patient's mental illness, isolation over time may contribute to increased psychiatric distress.

> Dis Level 3: EHR reviewed. Symptoms of mental illness may have contributed to this individual's behavior and should be considered in determining sanctions for this individual. Due to the severity of the patient's mental illness and past response to being in a more isolated environment, segregation, over an extended period of time is likely contraindicated.

(*Id.* at 8.)

Third, the MCSO Hearing Unit collected the consultation/override forms documenting the final determinations made by the Custody Bureau Hearing Unit Commander (or his designee) for the relevant group for the relevant period. (*Id.* at 3.) The Consultation/Override Form for Disciplinary Isolation of SMI/MHCC Inmates provides spaces for the Bureau Hearing Sergeant to document actions taken before and after a disciplinary hearing. (Doc. 2497-1 at 10.) Documentation includes whether consultation with CHS mental health staff occurred, the date, and the name of the person consulted; whether a disciplinary hearing was conducted and the date and time; whether disciplinary sanctions were suspended based upon consultation with CHS mental health staff or imposed after consultation with CHS mental health staff; and the name of the person who completed the form. (*Id.*) The form also provides spaces for the Bureau Hearing Unit

Commander or designee to document overriding CHS recommendations and the justification for doing so. (*Id.*)[3]

Fourth, for each Disciplinary Action Report ("DAR") created for the relevant group during the relevant period, Defendants reported to Plaintiffs the following information: DAR date, DAR number, detainee name, whether evidence of a consultation request was produced to Plaintiffs, whether evidence of a response to the consultation request was produced to Plaintiffs, whether the DAR indicates the response to the consultation was received and considered, whether disciplinary isolation was imposed, whether disciplinary isolation was imposed and suspended, whether any override by the Custody Bureau Hearing Unit Commander and justification were documented, whether CHS documented the consultation in the inmate's electronic medical record, and whether each placement was considered compliant with the May 20, 2019 Order.

In addition, Defendants produced to Plaintiffs all Disciplinary Action Reports created for the relevant group for the relevant period with the related email communications and consultation/override forms. Defendants provided Plaintiffs a list of CHS mental health personnel and their identification numbers. Defendants provided Plaintiffs' designated persons with remote access to the electronic medical records beginning on July 3, 2019.

**B.      Monthly Summaries of Compliance Data**

For a DAR involving a pretrial detainee and a possible sanction of disciplinary restriction or restrictive housing, Defendants defined an instance as compliant if there was documentation of the following: a request from MCSO for consultation by CHS mental health staff, a response from CHS mental health staff, receipt and consideration of the

---

[3] Defendants' Compliance Report does not state when an override is necessary, but their proposed plan states: "If the CHS MH staff recommends against a certain discipline, and the inmate committed a serious jail rule violation involving violence or jail facility security, the decision shall be made and documented by the Custody Bureau Hearing Unit Commander. The ultimate determination regarding an override will be addressed on the Consultation/Override Form, which will then be attached to the DAR." (Doc. 2497 at 4.)

response by MCSO, whether disciplinary restriction or restrictive housing was imposed or imposed and suspended, whether the CHS recommendation was overridden and the justification, and that the CHS consultation was documented in the inmate's electronic medical record. Defendants reported that they were compliant in 488 of 496 (98%) of the instances in which there was a potential sanction of isolation for a pretrial detainee in April 2019, 443 of 448 instances in May 2019 (98.8%), and 447 of 454 (98.4%) instances in June 2019.

### C.    Plaintiffs' Objections to Defendants' Compliance Report

#### 1.    Completeness

Plaintiffs contend that Defendants failed to account for all pertinent incidents because one of their experts, Eldon Vail, identified 43 Disciplinary Action Reports that were missing from Defendants' compliance report for April 2019. (Doc. 2520 at 6.) He did not opine that in any of the 43 excluded Disciplinary Action Reports Defendants failed to show evidence that mental health staff were consulted before disciplinary isolation was imposed on a pretrial detainee. Vail did not identify any missing incidents from the report for May or June 2019.

Defendants state that the numbers used by Vail to identify the 43 excluded Disciplinary Action Reports are not the assigned DAR numbers, the inmate booking numbers, or the Bates numbers provided by Defendants. (Doc. 2523 at 4.) However, at oral argument, Defendants' counsel said the 43 Disciplinary Action Reports involved sentenced inmates, not pretrial detainees, and had been inadvertently produced to Plaintiffs and properly excluded from Defendants' compliance report.

#### 2.    Substance

Plaintiffs disagree with Defendants' definition of compliance. Plaintiffs essentially disagree with the Court's definition of compliance.

On September 30, 2014, after six days of evidentiary hearing and argument, the Court made extensive findings of fact and conclusions of law and ordered "remedies that

do not exactly track constitutional standards but that are practical measures necessary to correct constitutional violations." (Doc. 2283 at 59.) The findings included:

> 193. Seriously mentally ill pretrial detainees should not be disciplined for behavior resulting from mental illness without the approval of a mental health provider.
>
> 194. Seriously mentally ill pretrial detainees should not be placed in isolation as a disciplinary sanction.

(*Id.* at 52-53.) The Court ordered Defendants to adopt and implement policies and procedures regarding the discipline of seriously mentally ill pretrial detainees. (*Id.* at 64.) The specific, practical remedies were included in the Fourth Amended Judgment. (*Id.* at 65-66.)

Subparagraph (26) of Paragraph 5(a) of the Revised Fourth Amended Judgment states: "Defendants will adopt and implement a written policy requiring that mental health staff be consulted regarding discipline of any seriously mentally ill pretrial detainee." (Doc. 2299 at 6.) On August 22, 2018, the Court clarified that the Revised Fourth Amended Judgment "does not prohibit imposing discipline on seriously mentally ill pretrial detainees for behavior resulting from mental illness. It does not prohibit assigning seriously mentally ill pretrial detainees to disciplinary segregation." (Doc. 2483 at 32.)

On August 22, 2018, the Court found, "Defendants have generally shown compliance with subparagraph 5(a)(26), but not for consultation concerning disciplinary isolation." (*Id.* at 35.) The Court expressly stated: "Defendants have demonstrated compliance with subparagraph (26) of Paragraph 5(a) of the Revised Fourth Amended Judgment except to the extent that further evidence is required concerning instances of disciplinary isolation." (*Id.* at 38.) Defendants were not ordered to further demonstrate general compliance with subparagraph (26), but rather to "demonstrate that before a seriously mentally ill pretrial detainee is placed in disciplinary isolation, CHS mental health staff are consulted and their recommendations addressing the potential effects of isolation on the pretrial detainee's mental health are received and considered." (*Id.* at 35.)

The August 22, 2018 Order further stated, "Defendants are not required to prove compliance with each term of their adopted policies and procedures." (*Id.* at 7.) The May 20, 2019 Order again required Defendants only to "demonstrate that before a seriously mentally ill pretrial detainee is placed in disciplinary isolation, CHS mental health staff are consulted and their recommendations addressing the potential effects of isolation on the pretrial detainee's mental health are received and considered." (Doc. 2500.)

Plaintiffs contend that Defendants' methodology is flawed because it "leaves out the essential elements of the remedy and Defendants' own policy" because they did not review medical records to second-guess the selection of disciplinary level made by CHS mental health staff, assess the quality and content of communications between MCSO and CHS mental health staff, evaluate decisions made by MCSO, and assess compliance with policies. (Doc. 2520 at 6-7.) They also contend that Defendants are not complying with subparagraph (26) of Paragraph 5(a) of the Revised Fourth Amended Judgment because some seriously mentally ill prisoners have been punished for behavior that is the product of their illness and have been subjected to disciplinary isolation when contraindicated. Defendants' experts opine that there is no meaningful involvement of CHS staff in the disciplinary process for seriously mentally ill prisoners. They opine that there is no documentation that mental health providers (not mental health staff) are contacted for prisoners designated as Discipline Level 2 or 3, which is required under Defendants' policy but not required by the May 20, 2019 Order. Plaintiffs' experts further opine that assignment of discipline levels is arbitrary yet has significant consequences in sanctions.

Defendants were ordered to produce objective proof that mental health staff are consulted and such consultation reaches disciplinary decision-makers before disciplinary isolation is imposed on seriously mentally ill pretrial detainees. That is what they have done. Therefore, the Court finds that Defendants have complied with the May 20, 2019 Order.

## III.    TERMINATION OF THIS CASE

Congress enacted the Prison Litigation Reform Act ("PLRA") to prevent federal courts from micromanaging prisons by mere consent decrees. *Gilmore v. California*, 220 F.3d 987, 996 (9th Cir. 2000). "The PLRA establishes a comprehensive set of standards to govern prospective relief in prison conditions cases." *Id.* at 998. It requires that prospective relief regarding prison conditions "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). Relief must be narrowly drawn, extend no further than necessary to correct the violation, and be the least intrusive means necessary to correct the violation. *Id.* Further, courts must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.* Courts must be sensitive to the need for deference to experienced and expert prison administrators and at the same time not allow constitutional violations to continue simply because a remedy would intrude into the realm of prison administration. *Brown v. Plata*, 563 U.S. 493, 511 (2011). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore*, 220 F.3d at 999.

The PLRA also provides that any order for prospective relief regarding prison conditions is terminable upon the motion of any party one year after the district court has entered an order denying termination of prospective relief under the PLRA. 18 U.S.C. § 3626(b)(1). The party seeking to terminate the prospective relief bears the burden of proof. *Gilmore*, 220 F.3d at 1007; *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (per curiam). Although § 3626 refers to "immediate termination" and a "prompt ruling," the district court must inquire into current prison conditions before ruling on a motion to terminate. *Gilmore*, 220 F.3d at 1007-08. Even if the existing relief qualifies for termination under § 3626(b)(2), if there is a current and ongoing violation, the district court

must modify the relief to meet the PLRA standards. *Id.* at 1008. "A district court is bound to maintain or modify any form of relief necessary to correct a current and ongoing violation of a federal right, so long as that relief is limited to enforcing the constitutional minimum." *Id.* at 1000.

Plaintiffs contend that, even if Defendants have fully complied with the Revised Fourth Amended Judgment, they are not entitled to termination of all relief if current and ongoing constitutional violations persist. Further, Plaintiffs assert, "Defendants have the burden of demonstrating the absence of current and ongoing violations as to mental health care, Plaintiffs have the right to present evidence of current and ongoing violations, and the Court must consider evidence of current conditions as to mental health care before deciding whether to retain, terminate, or modify the existing relief in the [Revised] Fourth Amended Judgment." (Doc. 2520 at 18.) Plaintiffs have made the same arguments multiple times previously, and the Court has rejected them in the context of the current status of this litigation. For example, the August 22, 2018 Order stated:

> Plaintiffs request that the Court re-open discovery and set deadlines for discovery and submission of evidence regarding whether there are current and ongoing constitutional violations as to mental health services at the Maricopa County Jails, repeating much of their August 2, 2016 Motion for Evidentiary Hearing (Doc. 2380), which the Court denied on March 1, 2017 (Doc. 2404). Although Plaintiffs insist that they have not asked for an evidentiary hearing this time, they contend that the Court must "take evidence as to current and ongoing conditions" before terminating the Revised Fourth Amended Judgment and imply that the procedures ordered by the Court do not constitute "taking evidence as to current and ongoing conditions" to determine whether there are current and ongoing constitutional violations regarding mental health services at the Maricopa County Jails. Plaintiffs further contend that "even if the Court were to find that Defendants have fully complied with the provisions of the Judgment, they would not be entitled to termination of all relief, if current and ongoing constitutional violations persist." (Doc. 2435 at 4.) . . . .
>
> Implicitly relying on Paragraph 3 of the Revised Fourth Amended Judgment, Plaintiffs assert: "The Fourth Amended Judgment covers the entire continuum of mental health care. (Doc. 2299.) Since Plaintiffs do not concede compliance with any provision of that Judgment, the Court must

take evidence as to all conditions related to Plaintiffs' mental health claims under the PLRA." (Doc. 2447 at 4.) . . . Plaintiffs essentially seek reconsideration of orders issued more than three years ago and repeatedly restated in order to launch a broad investigation of "the entire continuum of mental health care" in the Maricopa County Jails. As explained above, since 2008 Plaintiffs have had extensive opportunity to investigate "the entire continuum of mental health care" and to propose remedial relief, and the Court has reduced the scope of this case as Defendants have demonstrated compliance. Plaintiffs have not shown manifest error, new facts, or new legal authority to justify reconsideration of the Court's prior rulings. *See* LRCiv 7.2(g).

Plaintiffs also contend that the evidentiary record before the Court is not "current." Under the PLRA, upon motion of any party or intervener,

> Prospective relief shall not terminate if the court makes written findings based upon the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3). Before ruling on a motion to terminate, the court must inquire into current conditions at a prison. *Gilmore v. California*, 220 F.3d 987, 1008 (9th Cir. 2000). "The record" in § 3626(b)(3) means "a record reflecting conditions as of the time termination is sought." *Id.* at 1010.

Defendants filed their most recent motion to terminate prospective relief on August 9, 2013. A six-day evidentiary hearing was held in February and March 2014. Evidence was considered relevant if it tended to show whether any current and ongoing constitutional violation existed on August 9, 2013, the time termination was sought. Parties were ordered to propose remedies to correct constitutional deficiencies. On September 30, 2014, the Court made detailed findings of fact and conclusions of law and denied Defendants' motion to terminate prospective relief. Thus, there is no pending motion to terminate prospective relief, but there is a Court-ordered plan for Defendants to correct and prove correction of systemic constitutional violations that were identified based on the record reflecting conditions as of August 9, 2013. The Court also directed Plaintiffs to monitor Defendants' compliance actions and promptly bring to the Court's attention any perceived lack of compliance with each requirement, such as incomplete or inadequate revision of policies.

. . . Plaintiffs' interpretation of "current" as requiring re-opening of discovery immediately before the Court determines whether to terminate any

provisions of previously ordered prospective relief would make it impossible to ever have a record of "current" conditions or demonstrable proof that corrections had become institutionalized. And it would ensure eternal judicial oversight of the Maricopa County Jails.

(Doc. 2483 at 20-23.)

Defendants filed their most recent motion to terminate prospective relief on August 9, 2013. The Revised Fourth Amended Judgment ordered specific remedies to correct constitutional deficiencies. Through multiple rounds of data collection and compliance reports, Defendants have gradually demonstrated compliance with each of the specific remedies as ordered by the Court. Judicial oversight of the Maricopa County Jails will not be continued in perpetuity.

**IV. PLAINTIFFS' MOTION TO MODIFY THE REVISED FOURTH AMENDED JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(B)(5) AND FOR FURTHER RELIEF (DOC. 2521);**

**PLAINTIFFS' MOTION FOR SCHEDULE OF PRESENTATION OF EVIDENCE OF CURRENT CONDITIONS (DOC. 2522)**

Although the title of Plaintiffs' Motion to Modify (Doc. 2521) includes reference to Federal Rule of Civil Procedure 60(b)(5), it is a motion to reconsider the Revised Fourth Amended Judgment entered in 2014. Rule 60(b)(5) provides that a court may relieve a party from a final judgment or order if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Plaintiffs do not contend that the judgment has been satisfied or reversed or that applying it prospectively is no longer equitable. Rather than seeking relief from an existing judgment or order, Plaintiffs ask the Court to expand the Revised Fourth Amended Judgment to provide Plaintiffs additional relief.

Plaintiffs request that the Court order 17 additional remedies, most of which have been considered previously and rejected because they exceed the constitutional minimum and/or do not provide objective standards by which compliance can be determined. For example, Plaintiffs seek an order requiring mentally ill pretrial detainees to be seen at intake by a provider although subparagraph 5(a)(4) of the Revised Fourth Amended

Judgment requires them to be seen at intake by mental health staff and subparagraph 5(a)(15) requires them to be seen by a provider within 24 hours of referral. Plaintiffs ask the Court to prohibit punishment for behavior that is the product of mental illness, without exception or limits to the prohibition. Other remedies Plaintiffs seek, such as resolving refusals for treatment and transferring pretrial detainees to inpatient treatment facilities, often require court orders and are not within the authority of jail personnel to guarantee. Remedies such as developing and implementing "adequate" individualized treatment plans and behavioral management plans are not conducive to objective proof.

Plaintiffs justify their request for additional remedies by the opinions of two experts. Dr. Pablo Stewart's opinions are based on Maricopa County Jail policies and procedures filed in this case, previous compliance reports and associated records produced by Defendants, previous expert reports filed in this case, his own previous reports in this case, court filings and transcripts, and prisoner medical and disciplinary records, some of which he reviewed in 2019. Dr. Stewart expressly relied on declarations he made in April 2016 and December 2017. He does not state how many records he reviewed in 2019, how the records he reviewed were selected, or how many hundreds or thousands of seriously mentally ill pretrial detainees were in the Maricopa County Jail at the time, but he does provide 19 examples of medical and disciplinary records from 2019 that he opines demonstrate inadequate mental health care. Dr. Stewart generally opines that the Maricopa County Jail:

> (1) routinely fails to send patients to a higher level of care when needed; (2) provides untimely access to providers; (3) does not timely continue or initiate necessary medications and treatment to treat serious mental illness; (4) provides inadequate access to an inpatient level of care; (5) has under-utilized or inadequate mental health programs and services to meet detainees' serious mental health needs; (6) unnecessarily subjects seriously mentally ill prisoners to conditions so harsh as to predictably exacerbate their illness; (7) fails to develop and implement individualized treatment plans with mental health interventions and services to treat seriously mentally ill detainees, and (8) fails to develop and implement behavior management plans to address

patients engaging in self-injurious behavior (SIB) and other behaviors driven by their illness.

(Doc. 2521-2 at 3.)  Dr. Stewart opines that the problems he identifies now have persisted since his 2016 assessment.  The second expert, Eldon Vail, relies primarily on Dr. Stewart's opinions.  The experts' declarations do not provide a basis for concluding that constitutional violations, if any, are systemic.

Under the Local Rules,

> The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence.  Any such motion shall point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order.  No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order.  Failure to comply with this subsection may be grounds for denial of the motion.

LRCIV 7.2(g)(1).  Plaintiffs have not shown new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence, nor do they purport to.  They assert only that "[t]he passage of time has demonstrated that the prospective relief ordered in 2014 was not sufficient[] to correct constitutional violations at the Jail."  (Doc. 2521 at 1.)  Plaintiffs' motion to modify the Revised Fourth Amended Judgment, construed as a motion for reconsideration, will be denied.

Further, circumstances do not warrant the modifications sought by Plaintiffs under Rule 60(b)(5).  "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests."  *Horne v. Flores*, 557 U.S. 433, 447 (2009).  Rule 60(b)(5) serves an important function in institutional reform litigation in which injunctions often remain in force for many years, during which circumstances and governing law often change.  *Id.* at 447-48.  Under Rule 60(b)(5), Plaintiffs must establish that "a significant change in circumstances warrants revision" and the proposed modification is "suitably

tailored to the changed circumstance." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992). "A party seeking modification of a consent decree may meet its initial burden by showing either a significant change either in factual conditions or in law." *Id.* at 384. But the Revised Fourth Amended Judgment is not a consent decree, and Plaintiffs have not identified a significant change in factual conditions or in law. In fact, Defendants have demonstrated significant improvements in factual conditions over the past 11 years, and Plaintiffs have raised the same objections to similar factual conditions in previous rounds of this litigation. Plaintiffs are merely challenging the legal conclusions on which the Revised Fourth Amended Judgment rests.

In some cases, courts have granted decree modifications because the current relief is not meeting its intended purpose. *See, e.g.*, *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 252 (1968) (district court was directed to determine whether, after ten years, a decree designed to recreate a competitive market had done so and, if not, modify the decree so as to terminate the illegal monopoly). The intended purpose of the Revised Fourth Amended Judgment is to correct systemic constitutional deficiencies in medical and mental health care provided to pretrial detainees in the Maricopa County Jails by ordering prospective relief that is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right. It is intended to do so without requiring judicial micromanagement of the Maricopa County Jails. In institutional reform litigation generally, consistent with the Prison Litigation Reform Act, courts must "remain attentive to the fact that federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate federal law or does not flow from such a violation." *Horne*, 557 U.S. at 450. "If a durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper." *Id.*

In summary, Plaintiffs contend that the relief ordered by the Revised Fourth Amended Judgment in 2014 was insufficient to correct constitutional deficiencies when it

was ordered and the Court further erred in 2017, 2018, and 2019 by finding Defendants proved compliance with the specific remedies ordered in 2014. All of their arguments were made or could have been made previously in 2014, 2017, 2018, and 2019. They have not shown manifest error or new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence as required by Local Rule 7.2(g)(1) or a significant change either in factual conditions or in law as required by Rule 60(b)(5). Plaintiffs' motion to modify the Revised Fourth Amended Judgment will be denied. (Doc. 2521.)

Plaintiffs' request that the Court order the parties to propose a plan and schedule for the presentation of evidence to the Court to determine whether and to what extent the existing relief in this case shall be terminated or modified will be denied as moot. (Doc. 2522.)

IT IS THEREFORE ORDERED that the Revised Fourth Amended Judgment (Doc. 2299) is terminated. The Clerk shall close this case.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Modify the Revised Fourth Amended Judgment Under Federal Rule of Civil Procedure 60(b)(5) and for Further Relief (Doc. 2521) is denied.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Schedule of Presentation of Evidence of Current Conditions (Doc. 2522) are denied as moot.

Dated this 19th day of September, 2019.

_____

Neil V. Wake
Senior United States District Judge