**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fred Graves, Isaac Popoca, on their own behalf and on behalf of a class of all pretrial detainees in the Maricopa County Jails,<br><br>Plaintiffs,<br><br>v.<br><br>Paul Penzone, Sheriff of Maricopa County; Bill Gates, Steve Gallardo, Jack Sellers, Steve Chucri, and Clint L. Hickman, Maricopa County Supervisors,<br><br>Defendants. | No. CV-77-00479-PHX-NVW<br><br>**ORDER** |

Before the Court are Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Costs (Doc. 2531) and Plaintiffs' Bill of Costs (Doc. 2532). For the reasons stated below, the motion will be granted for the most part and the objection to the bill of costs will be overruled.

## I.   BACKGROUND

This action is 42 years old. The history of the proceedings has been detailed in prior orders. (*See, e.g.*, Doc. 2525). *Cf.* David Marcus, *Finding the Civil Trial's Democratic Future After Its Demise*, 15 Nev. L. J. 1523, 1530-56 (2015) (detailing the history of this litigation).

A class of pretrial detainees in the Maricopa County Jails brought this action in 1977 against the Maricopa County Sheriff and the Maricopa County Board of Supervisors ("Defendants") for an injunction against violations of their constitutional rights. In 1981,

the parties entered into a consent decree that found liability and regulated certain jail operations. A stipulated Amended Judgment was entered in 1995, which Defendants thrice moved to terminate. Defendants' first motion, made in 1998, was denied on grounds later reversed by the Court of Appeals; the second motion was made on remand in 2001 but was not ruled on before the undersigned judge was assigned this case in 2008.

In 2008, after a 13-day evidentiary hearing, the Court found that numerous provisions of the Amended Judgment remained necessary to correct ongoing constitutional violations and entered a Second Amended Judgment restating the remaining operative terms. The Court was required by law to await Defendants' proposals for remedying those violations and thereby complying with the Second Amended Judgment. Over the course of 2011 and 2012, the nonmedical provisions thereof were terminated upon Defendants' demonstration of compliance and a Third Amended Judgment—which stated Defendants' continuing violations—was entered.

In 2013, Defendants moved to terminate the Third Amended Judgment. The Court largely denied the motion in 2014 and ordered remedies to correct the remaining constitutional violations, which were restated in the Revised Fourth Amended Judgment. Specifically, the Court continued some prospective relief and identified 31 requirements Defendants had to fulfill. As the Court later stated, the Revised Fourth Amended Judgment required them to meet various deadlines and anticipated "that Plaintiffs will promptly bring to the Court's attention any perceived lack of compliance with each requirement." (Doc. 2309.) Indeed, the Court reiterated the obvious that the Plaintiffs were not "required to accept as true Defendants' assertions about their compliance." (Doc. 2352.)

The Court found in 2017 that Defendants had demonstrated compliance with 21 of the requirements and in 2018 determined Defendants had demonstrated compliance with seven more. On January 15, 2019, the Court found Defendants had shown compliance with an additional two, leaving one final requirement, stated in the Revised Fourth Amended Judgment as follows: "Defendants will adopt and implement a written policy

requiring that mental health staff be consulted regarding discipline of any seriously mentally ill pretrial detainee." (Doc. 2299 at 6.) On July 19, 2019, Defendants filed a compliance report regarding this requirement.

On September 19, 2019, the Court found Defendants had demonstrated compliance with the last requirement and denied Plaintiffs' motions. All the requirements having been fulfilled, the Court terminated the Revised Fourth Amended Judgment. This motion for attorneys' fees followed.

## II. DISCUSSION

Over many years, Defendants repeatedly contended they had complied with the Court's judgments and the Court repeatedly found these contentions were wrong. Meanwhile, Plaintiffs repeatedly demonstrated Defendants were in violation of the judgments and of their constitutional rights. Plaintiffs' tireless advocacy has been essential to defeating Defendants' erroneous assertions of compliance. Based on this advocacy, Plaintiffs are entitled to their attorneys' fees, which, for the most part, were reasonably incurred at a reasonable hourly rate.

### A. Plaintiffs Are Entitled to an Award of Their Attorneys' Fees

The threshold question is whether Plaintiffs are entitled to their attorneys' fees. Two statutes—the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. § 1988(b), and the Prison Litigation Reform Act (the "PLRA")—govern. Under § 1988(b), the Court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). To qualify as a prevailing party:

> [A] civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement . . . . In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (internal citations omitted). A party that prevails by obtaining a consent decree may recover attorneys' fees under § 1988(b) for monitoring compliance with the decree—even when such monitoring does not result in any new judicially sanctioned relief. *Keith v. Volpe*, 833 F.2d 850, 855-57 (9th Cir. 1987); *see also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 452 (9th Cir. 2010) (reaffirming the holding in *Keith* and concluding the plaintiff "may recover attorneys' fees under § 1988 for monitoring the state officials' compliance with the parties' settlement agreement").

In addition, "[i]n actions by prisoners, it is not enough that fees are authorized under the Civil Rights Attorney's Fees Award Act of 1976." *Balla v. Idaho*, 677 F.3d 910, 918 (9th Cir. 2012) (footnote omitted). Under the PLRA, "fees 'shall not be awarded, except to the extent that' the fee was directly and reasonably incurred in proving a violation of the plaintiff's rights, and either the amount is proportionate to the relief ordered, or alternatively, the fee is 'directly and reasonably incurred in enforcing the relief.'" *Id.* (quoting 42 U.S.C. § 1997e(d)(1)). "The PLRA defines relief as 'all relief in any form that may be granted or approved by the court, and includes consent decrees.'" *Webb v. Ada County*, 285 F.3d 829, 834-35 (9th Cir. 2002) (quoting 18 U.S.C. § 3626(g)(9)). Therefore—and as the Court previously determined—the PLRA permits compensation for attorneys' fees incurred for proving an actual violation of the plaintiff's rights and for enforcing a court order or a consent decree. *Graves v. Arpaio*, 633 F. Supp. 2d 834, 843-44 (D. Ariz. 2009); *accord Webb*, 285 F.3d at 835 (holding the plaintiff's "attorney's fees incurred for postjudgment enforcement of the district court's orders and the consent decree were compensable under the PLRA").

Plaintiffs are and always have been the prevailing parties in this litigation. They won a consent decree in 1981, which was reaffirmed in a stipulated judgment in 1995. In the ensuing years, Plaintiffs repeatedly defeated in whole or in part Defendants' numerous assertions of compliance and attempts to terminate the stipulated judgments. Through Plaintiffs' persistence and Defendants' recalcitrance, this case has become the poster child

for the maxim "injunctions do not always work effectively, without lawyers to see that the enjoined parties do what they were told to do." *See Balla*, 677 F.3d at 918.  Plaintiffs are entitled to their reasonable fees for monitoring and enforcing the Court's judgments.  They did not have to obtain new judicially sanctioned relief, *Prison Legal News*, 608 F.3d at 452, or proof of new constitutional violations, *Webb*, 285 F.3d at 834-35, to be entitled to an award of their fees for monitoring and enforcing compliance with the original relief from 1981 and 1995.

Yet, Defendants argue (without citing any authority) they were the prevailing parties as of January 15, 2019, and object to $69,990.73 in Plaintiffs' fees and expenses incurred on or after that date.  Defendants reason that notwithstanding (1) the consent decree they entered into, (2) the numerous judgments that were entered by the Court, and (3) their frequent and failed attempts to terminate them, they became the prevailing parties when the Court terminated the Revised Fourth Amended Judgment last September.  In other words, Defendants believe they became the prevailing parties, and therefore not obligated to pay attorneys' fees, even before they ended their 40-year run of systematically violating Plaintiffs' constitutional rights.

Defendants' contention is, to use Justice Scalia's euphemism, "[p]ure applesauce." *See King v. Burwell*, ___ U.S. ___, 135 S. Ct. 2480, 2501 (2015) (Scalia, J., dissenting). The issue here is not whether Defendants—after entering into a consent decree and failing to right all their constitutional wrongs for decades—suddenly attained prevailing party status in January 2019.  Rather, the issue is whether Plaintiffs should be compensated for their monitoring and enforcement work that continued after January 15, 2019, until the Court's September 19, 2019 order terminating the Revised Fourth Amended Judgment.

The Court's January 15, 2019 order did not then terminate the Revised Fourth Judgment or otherwise free Defendants from the Court's oversight.  To the contrary, the Court ordered "that subparagraph (26) of Paragraph 5(a) of the Revised Fourth Amended Judgment remain[ed] in effect." (Doc. 2493 at 9.)  In evaluating Defendants' "convoluted,

indirect, and not understandable" proposed plan for demonstrating compliance therewith, the Court explained:

> Ten years have passed since Defendants were found in continuing violation of constitutional standards under the 1981 consent decree and its amendments. Defendants have undertaken multiple rounds of attempted cure. Progress has been made each time, but after multiple attempts Defendants still do not have it all right. The Court has deferred to Defendants' initiative to propose cures, but after ten years and in light of Defendants' inability even now to come up with a persuasive and effective cure of this last continuing constitutional violation, it is time for the Court to direct a cure and have this over with.

(*Id.* at 7-8.) In directing such a cure, the Court further ordered Defendants to provide a new proposed plan to Plaintiffs, authorized Plaintiffs to provide an alternative plan, ordered counsel to confer on the plans, and set a hearing on the plans. (*Id.* at 9.)

Only the September 19, 2019 order established the work had been done. It terminated the Revised Fourth Amended Judgment, denied Plaintiffs' pending motions, and lifted the injunction. Defendants did not win the war or the battle; on September 19, 2019, they finally fled the battlefield. Plaintiffs are and always have been the prevailing parties.

Recent Ninth Circuit authority is squarely on point. In *Balla*, a class action under the PLRA, the plaintiffs moved to hold the defendants in contempt for dithering on setting deadlines for complying with the injunction they had won years prior and were violating. *Balla*, 677 F.3d at 911, 914. However, by the time the contempt motion was heard, the violation had ceased and compliance had been achieved. *Id.* at 914. The district court denied the motion, noting the principal defendant had complied and had not intentionally violated the injunction. *Id.* Thereafter, the plaintiffs moved for an award of attorneys' fees, costs, and expenses. *Id.* at 915. While the defendants conceded the plaintiffs were the prevailing parties, they objected that "awarding anything for the contempt motion would be erroneous, because plaintiffs had not prevailed on that motion." *Id.* The district court overruled the objection. *Id.*

- 6 -

The Court of Appeals held the denial of the contempt motion did not require denial of fees. The fee award was not an abuse of discretion. *Id.* at 918. After finding the plaintiffs' compliance monitoring fees were compensable under *Keith*, *Prison Legal News*, and other precedents, *id.* at 917-18, the Court of Appeals found the fees on the contempt motion also could have been directly and reasonably incurred in enforcing the injunction, even though the motion was denied due to the defendants' recent compliance. *Id.* at 920. It explained:

> [S]uch losing motions as the one at issue here are a common and effective tool for bringing about conformity to the law. Such motions might be seen as the opposite of a Pyrrhic victory. Despite losing the battle over the contempt motion, the prisoners nevertheless won the war by inducing the State's prompt return to compliance with the injunction.

*Id.* Indeed, before the contempt motion was filed, all the defendants produced regarding compliance were hopeful claims. *Id.* Thirteen days after it was filed, the defendants produced results. *Id.* The Court of Appeals determined the record "amply support[ed]" the district court's finding that the denied motion "played a key role" in achieving compliance and such motions are appropriate "to ensure the injunctive relief is being complied with." *Id.* Noting "[t]he best defense against an action or motion to compel compliance with a legal obligation is compliance," the Court of Appeals concluded "[t]he object of the motion was to obtain compliance, not to win an order hopefully leading to compliance. The object was attained." *Id.*

Here, on the September 19, 2019 rulings the Plaintiffs' object was attained—the constitutional violations they fought to redress were redressed. Moreover, all the Plaintiffs' filings played a "key role" in pushing Defendants across the finish line—or more accurately in dragging them across the finish line 38 years late. After the Court ordered Defendants to provide Plaintiffs a proposed plan to redress the final violation, Plaintiffs, perhaps paying heed to the Court's observation that Defendants' previous plan was "convoluted, indirect, and not understandable," (Doc. 2493), provided Defendants a plan of their own, conferred

with Defendants on their plan, and filed a proposal for demonstrating compliance. (Doc. 2498.) After the Court ordered a compliance plan, Plaintiffs (over Defendants' opposition) successfully moved for an order to modify the compliance plan by making Defendants' responsibilities thereunder more specific. (Docs 2500-01; 2506; 2509.) Even though the Court later overruled Plaintiffs' objections to Defendants' compliance report, Plaintiffs' advocacy proved to be an "effective tool for bringing about conformity to the law," *see Balla*, 677 F.3d at 920, as it resulted in Defendants eliminating the last of the constitutional violations of which Plaintiffs have long complained.

Defendants' objection to $65,625.15 in fees and $4,365.58 in attorney expenses incurred on or after January 15, 2019 is accordingly overruled.

### B. Plaintiffs' Fees Are Largely Reasonable

While Plaintiffs are entitled to their attorneys' fees, their fees must be reasonable. The calculation of a reasonable fee award involves a two-step process known as the lodestar method. First, the Court must calculate the lodestar figure "by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (internal citation omitted). This figure "*roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010), and is presumptively reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (internal citation omitted). Second, the Court must determine whether to adjust the lodestar figure upward or downward based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case,

> (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70; *cf.* Local Rule LRCiv 54.2(c)(3) (listing "various factors bearing on the reasonableness of the requested attorneys' fee award," which track the *Kerr* factors). A court need only consider factors "that are not already subsumed in the initial lodestar calculation." *Fischer*, 214 F.3d at 1119 (footnote and internal citations omitted). "Among the subsumed factors . . . taken into account in . . . the lodestar calculation are: '(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' and (5) the contingent nature of the fee agreement."[1] *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (quoting *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988), *vacated on other grounds*, 490 U.S. 1087 (1989), *reinstated*, 886 F.3d 235 (9th Cir. 1989)) (citing *Dague*, 505 U.S. at 565-67); *see also Gonzalez*, 729 F.3d at 1209 n.11 (noting "we presume that the district court accounts for" the factors recited in *Morales* (internal alterations, quotation marks, and citation omitted)).

In addition, fees for the successful party need not be reduced for unsuccessful strategies. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." (footnote omitted)). Unsuccessful strategies are fully compensable unless they are expended on separate and distinct claims.

Finally, where the reduction from the amount of fees requested is relatively small, as it is here, only a cursory explanation is necessary:

---

[1] Upward enhancement based on the contingent nature of counsel's services is not allowed under § 1988. *Dague*, 505 U.S. at 565-67.

- 9 -

> When the district court makes its award, it must explain how it came up with the amount. The explanation need not be elaborate, but it must be comprehensible. . . . Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected. . . . [T]he burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices. If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1111, 1116 (9th Cir. 2008) (internal citation omitted).

### 1. Plaintiffs' Hourly Rates Are Reasonable and Comply with the PLRA

"A reasonable hourly rate is ordinarily 'the prevailing market rate[] in the relevant community." *Kelly*, 822 F.3d at 1099 (quoting *Perdue*, 559 U.S. at 551). Generally, the "relevant community is the forum in which the district court sits." *Gonzalez*, 729 F.3d at 1205 (internal quotation marks omitted). The fee applicant bears the burden of producing "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Satisfactory evidence includes "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *cf.* Local Rule LRCiv 54.2(d)(4)(B) (requiring moving counsel to submit an affidavit in part regarding "the comparable prevailing community rate or other indicia of value of the services rendered for each attorney for whom fees are claimed"). In addition, a district court may "rely on its own familiarity with the legal market" in determining a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

However, the PLRA adds to this framework. Under the PLRA, "the hourly rate used as the basis for a fee award is limited to 150 percent of the hourly rate used for paying appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A." *Kelly*, 822 F.3d at 1100 (citing 42 U.S.C. § 1997e(d)(3)). The hourly rate established under section 3006A "is the amount the Judicial Conference [of the United States] authorized and requested from Congress." *Parsons v. Ryan*, 949 F.3d 443, 465 (9th Cir. 2020). That amount can be derived from the Congressional Budget Summary or the Report of the Proceedings of the Judicial Conference of the United States. *See id.* at 464-65, 465 n.12 (holding the district court did not err in consulting only the Congressional Budget Summary); *see also Perez v. Cate*, 632 F.3d 553, 555-56, 555 n.1 (9th Cir. 2011). The rate cap set by the PLRA applies to both attorneys' fees and paralegal fees. *Perez*, 632 F.3d at 554.

Plaintiffs seek fees billed by their attorneys at a rate of $223.50 per hour and by paralegals, law students, and various other professionals at rates of $165.00 per hour (for the Washington-based professionals) and $150.00 per hour (for the Phoenix-based paralegal). Based on their attorney affidavits, these rates and those of their colleagues are reasonable and within the prevailing market rates for both Washington and Phoenix. Indeed, and PLRA rates for the more senior lawyers fall dramatically below the market rates for both Washington and Phoenix. Under the Judiciary Fiscal Year 2020 Congressional Budget Summary, the current CJA rate authorized by the Judicial Conference is $149.00 per hour, and the maximum PLRA rate is accordingly $223.50 per hour. *See* Admin. Office of the U.S. Courts, *The Judiciary Fiscal Year 2020 Congressional Budget Summary* 37-38 (Feb.2001), https://www.uscourts.gov/sites/default/files/fy_2020_congressional_budget_summary_0.pdf (last visited Apr. 23, 2020). Defendants do not object to any of the requested rates, and the Court finds them reasonable.

The PLRA rate in 2020 is not the same as it was in the other years in which Plaintiffs billed (2014-2019). However, nothing in the PLRA establishes that historical PLRA rates

should be employed in lieu of the current rate as the cap for when fees are awarded. It merely states, "No award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). As of this ruling, the "hourly rate established under section 3006A," is $149.00 according to the 2020 Budget Summary. 150% percent of that rate is therefore allowable.

Moreover, even if the statutory language were ambiguous, ambiguity would favor application of the current rate cap. As the Supreme Court has explained in the context of 42 U.S.C. § 1988(b):

> Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute.

*Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (footnoted omitted); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1993) (recognizing that "district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds" (internal citations omitted)). Numerous district courts have employed the reasoning of *Jenkins* in awarding fees at then-current PLRA rates to compensate for delays in payment. *E.g., Lira v. Cate*, No. C 00-0905 SI, 2010 WL 727979, at *4 (N.D. Cal. Feb. 26, 2010); *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1282-83 (D. Wyo. 2004). *Contra Plata v. Schwarzenegger,* No. C01-1351 TEH**,** 2009 WL 2997412, at *2 (N.D. Cal. Sept. 16, 2009) (determining the current PLRA rate should not be used)

### 2. **Plaintiffs' Hours Billed Are Mostly Reasonable**

"[A] 'reasonable' number of hours equals the number of hours which could reasonably have been billed to a private client." *Gonzalez*, 729 F.3d at 1202 (internal

- 12 -

alterations and quotation marks omitted). The prevailing party bears the burden of "submitting billing records to establish that the number of hours it has requested are reasonable." *Id.* (internal citation omitted); *see also* Local Rule LRCiv 54.2(d)-(e) (requiring moving counsel to submit a "task-based itemized statement of time expended and expenses").

In determining the proper number of hours to be included in a lodestar calculation, "excessive, redundant, or otherwise unnecessary" hours should be excluded. *Hensley*, 461 U.S. at 434. There are two methods for excluding such hours. First, courts may exclude them after "conduct[ing] an hour-by-hour analysis of the fee request." *Gonzalez*, 729 F.3d at 1203 (internal quotation marks omitted). Second, courts "faced with a massive fee application" may "make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Id.* (internal quotation marks omitted). Overall, as the Supreme Court has explained:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011).

Defendants have raised numerous objections to the hours billed by Plaintiffs' attorneys and their colleagues. The Court has reviewed all the objections and all the schedules in support thereof and overrules all of them as unmeritorious except where specifically sustained. In general, the services expended were reasonable in amount and value. Moreover, the principle that unsuccessful strategies are compensable unless they are expended on separate claims defeats numerous objections. The objections are addressed below.

        **a.**    **"Excessive, Redundant, and Unnecessary" Pleadings.** Defendants object to $74,021.70 in fees as "excessive, redundant or unnecessary." Examination of the

schedule submitted does not bear that out. Plaintiffs' counsel's work with experts (who were court-appointed monitors by agreement of the parties), including "telephone calls, consults, drafting, and revising declarations" (Doc. 2533 at 5), was entirely proper. Plaintiffs were entitled to be thorough and not obligated to follow Defendants' oft-repeated practice of relying on bare assertions. The experts were appointed to monitor Defendants' (often-incorrect) assertions of compliance. No fees were sought or awarded on discovery motions; that would have been the time for Defendants to seek such fee awards. Both parties have made arguments that had been resolved in prior orders. These objections are overruled.

      **b.**      **Clerical Tasks.** Clerical tasks are not compensable as attorneys' fees. But larger tasks customarily performed by legal assistants may be compensable at legal assistant rates. *See Jenkins*, 491 U.S. at 284-85 (stating "that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals [and law clerks]" and support staff "whose labor contributes to the work product" of an attorney); *cf. Cont'l Townhouses E. Unit One Ass'n v. Brockbank*, 152 Ariz. 537, 544, 733 P.2d 1120, 1127 (Ct. App. 1986) ("We conclude that legal assistant and law clerk services may properly be included as elements in attorneys' fees applications and awards"). Plaintiffs acquiesce in the objection to 18.5 hours ($3,602.40) and the objection as to those hours is sustained. The objection is otherwise overruled.

      **c.**      **Continuances.** The objection to $1,450.65 in time spent preparing 21 motions to extend court deadlines is unexplained as to why any or all the continuances were unnecessary. All were reasonable. The objection is overruled.

      **d.**      **Training and File Review.** Clients should not be charged for general training of junior lawyers and legal assistants. But seasoned lawyers should divide their labor with junior lawyers and legal assistants to provide cost-effective services. But dividing labor necessitates supervision on the part of those delegating work. Services in providing such supervision are both reasonable and indispensable. Meanwhile, in a 42-

year-old case such as this, turnover among lawyers and legal assistants is inevitable, and new people must learn enough of the case to provide needed services. Defendants' objection to Plaintiffs' fees incurred for getting their new service providers up to speed with the case demands the impossible—that Plaintiffs' attorneys litigate a prisoner class action without knowing what they were doing. This objection is overruled.

   **e. Soliciting and Staffing New Class Counsel Attorneys.** Defendants object to $4,249.95 in Plaintiffs' counsel's time spent attempting to get new class counsel without having them first certified as class counsel. In July 2015, attorneys from a new law firm made voluntary appearances as Plaintiffs' counsel without first moving for certification as class counsel. (Docs. 2319-20.) A few days later, existing local class counsel moved to withdraw without indicating why other local class counsel would be needed. (Doc. 2321.) The Court denied the motion, noting that under Local Rule LRCiv 83.3(b), "substitution of counsel is accomplished by seeking court approval for the substitution, not by filing a notice of appearance by new counsel followed by a motion to withdraw by current counsel." (*See* Doc. 2322.) The Court later clarified that Plaintiffs' counsel and existing local class counsel were "the only court-appointed class counsel for Plaintiffs." (Doc. 2327.) After existing local class counsel filed a rule-compliant application for substitution of counsel, (Doc. 2326), the Court simultaneously discharged existing local class counsel and disallowed the appointment of new counsel. (Doc. 2331.) With this case nearing the end (and long past the point it should have been over), it would have incurred substantial additional and unnecessary legal fees for new local class counsel to be certified and get up to speed. An award of fees will be denied for Plaintiffs' counsel's attempt to get new class counsel, not because it failed, but because the stratagem was wanting in candor. Therefore, Defendants' objection to $4,249.95 in fees for soliciting and staffing new local class co-counsel is sustained.

   **f. Travel Time.** Defendants object to $21,858.30 in Plaintiffs' counsel's air travel time fees, asserting that Local Rule LRCiv 54.2(e)(2)(D) states that

- 15 -

"[o]rdinarily air travel time should not be charged." However, as of December 1, 2019, that provision of rule was repealed. Moreover, even before it was repealed, that rule was ruled invalid as it exceeded the Court's statutory authorization to make local rules of procedure. *11333, Inc. v. Certain Underwriters at Lloyd's, London*, No. CV-14-02001-PHX-NVW, 2018 WL 2322783, at *2 (D. Ariz. May 22, 2018). It contradicted the substantive law of 42 U.S.C. § 1988(b) regarding what legal services are compensable. Whether air travel time fees are reasonably incurred is a question of fact. *See United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015) (referring to the "district court's factual finding of reasonableness" of a fee request); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986) (noting "transportation costs" are recoverable under 42 U.S.C. § 1988 as "out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client"). Here, the air travel was reasonably necessary to class counsel's representation. The objection to $21,858.30 in travel time fees is overruled.

      **g.**    **Billing Entry Error.** Plaintiffs acquiesce to this objection, which is sustained in the amount of $1,452.75.

      **h.**    **Costs Billed "Without a Receipt or Documentation."** Defendants object to $584.54 in expenses without receipts. All are recorded in Plaintiffs' counsel's contemporaneous Timeslips records. It is not clear that the Local Rule disqualifies these *de minimis* expenses, recorded contemporaneously. Therefore, Defendants' objection to $584.54 in expenses is overruled.

      **i.**    **Travel Expenses.** Air travel expenses for airfare fees, baggage fees, and ticket change fees are plainly reasonable. However, Plaintiffs acquiesce to the objection to a $75.00 flight change fee and the objection as to that expense is sustained. The objection is otherwise overruled.

      **j.**    **PACER.** The $45.70 charge for PACER fees is unique to this case and is therefore a proper charge. Defendants' objection to that charge is overruled.

**k.    Interest.** The attorneys' fees claims are unliquidated until the reasonable amounts are determined. Therefore, pre-judgment interest may not be awarded. Post-judgment interest at the federal rate shall be awarded. *See* 28 U.S.C. § 1961.

### 3.    The Lodestar Shall Not Be Adjusted

Neither party seeks an adjustment of the lodestar figure. The Court has considered the *Kerr* factors not subsumed in the initial lodestar calculation. *See supra*, section II.B. Based on the analysis conducted in section III.C.1. of the Court's April 20, 2009 attorneys' fees order, s*ee Graves*, 633 F. Supp. 2d at 847, the Court finds no reason to adjust the initial lodestar figure downward. The lodestar shall stand.

Plaintiffs will also be awarded their reasonable attorney fees incurred on their Motion for Attorneys' Fees and Non-Taxable Costs (Doc. 2531) and not already claimed in the amounts quantified.

IT IS THEREFORE ORDERED that Defendants' objections to $9,380.10 of Plaintiffs' fee claim are sustained.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Costs (Doc. 2531) is granted in the amount of $488,893.75.

IT IS FURTHER ORDERED that Defendants' objection (Doc. 2534) to the Bill of Costs (Doc. 2532) is overruled in its entirety.

IT IS FURTHER ORDERED that Plaintiffs may submit by May 8, 2020, Supporting Documentation in support of any claim for attorney fees on their Motion incurred after the amounts they previously quantified; Defendants may file objections by May 20, 2020; Plaintiffs may file a reply to any objection by May 28, 2020.

Dated this 27th day of April 2020.

_____
Neil V. Wake
Senior United States District Judge